UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**NOT FOR PUBLICATION**

------------------------------------------------------X
Al Kowalski d/b/a Kowalski Plumbing, and :
Michelle Winick d/b/a Michelle Winick :
Design, Michael Gidro, individually and on :
behalf of all others similarly situated, :
                                                :    **Civil Action No. 09-2382 (PGS)**
                                                :
          Plaintiffs, :
                           :
      v. :    **REPORT AND RECOMMENDATION**
                          :
YellowPages.com, LLC, :
                         :
          Defendant. :
_____X

**SALAS, United States Magistrate Judge**

## I. INTRODUCTION

Plaintiffs, Al Kowalski, Michelle Winick and Michael Gidro, are New Jersey residents who allegedly entered into advertising contracts with Defendant YellowPages.com, LLC ("Defendant" or "YellowPages.com") by signing or orally agreeing to the Contract for Internet YellowPages.com Advertising ("Order Form"). Plaintiff Kowalski initially filed a complaint in this Court on behalf of a putative nationwide class consisting of advertisers with YellowPages.com during the class period being pursued for payment by Defendant and/or those who have had an adverse credit rating, challenging various aspects of Defendant's business practices, including the formation and performance of advertising contracts. (*See* Docket Entry No. 1-1 ¶ 73). On November 6, 2009, Mr. Kowalski amended the complaint by adding two New Jersey class representatives but narrowing the putative class to include only New Jersey

advertisers with YellowPages.com.[1]  (*See* First Am. Compl., Docket Entry No. 16, ¶ 1).  Plaintiffs' counsel subsequently filed a separate nationwide class action against Defendant in the Southern District of California.  (*See* Defendant's Notice of Motion to Transfer, Docket Entry No. 23, Ex. A).  In response, Defendant has filed a motion to transfer both actions to the Southern District of New York, or in the alternative, to New Jersey.[2]

In the First Amended Complaint, Plaintiffs allege that Defendant (1) violated the New Jersey Consumer Fraud Act ("CFA") and (2) breached contracts with each of the individual Plaintiffs.  (First Am. Compl. ¶¶ 125-32).  Pending before this Court is a motion by YellowPages.com to transfer venue to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).  (*See* Defendant's Notice of Motion to Transfer 1).  The parties mainly dispute the validity of the New York forum selection clause in the Terms and Conditions for Internet Advertising ("Terms and Conditions") and whether it justifies the transfer.  The Court now agrees with Defendant that the Court should transfer this action to the Southern District of New York and presents its finding to the Hon. Peter G. Sheridan via Report and Recommendation.

## II.  BACKGROUND

Defendant moves to transfer this action to the Southern District of New York pursuant to a forum selection clause in the Terms and Conditions that Defendant claims is applicable to each Plaintiff.  The section entitled "Applicable Law" within the Terms and Conditions states that "[a]ny action or proceeding brought by you under or relating to this Agreement shall be brought

---

[1] Specifically, the putative class consists of "all persons or entities in the State of New Jersey that allegedly contracted with Defendant for advertising services from and after May 1, 2005."  (*See* First Am. Compl. ¶ 1).

[2] As a general practice in each matter, the Court maintains a case journal.  This information was obtained from the Court's notes in that journal.

in a state or federal court located in the City of New York, State of New York..." (First Am. Compl. Ex. B).  Defendant states that a forum selection clause is presumptively valid, and in this case the clause is mandatory because Plaintiffs' breach of contract and CFA claims are clearly brought "under" and are "related" to the parties' advertising contracts.  Defendant does not dispute that Plaintiffs received the Terms and Conditions after they assented to the Order Form, which it claims is an accepted commercial practice.  (*See* Defendant's Reply Memorandum of Law in Support of Motion to Transfer ("Def. Reply"), Docket Entry No. 25, 8).  Instead, Defendant argues that Plaintiffs cannot show that the inclusion of the forum selection clause itself was a result of Defendant's fraud or overreaching.  Defendant further notes that Plaintiffs assented to the forum selection clause by accepting and performing pursuant to their respective contracts and/or by suing for breach of contract.  (*See* Defendant's Memorandum of Law in Support of Motion to Transfer ("Def. Brief"), Docket Entry No. 23-2, 2-3, 13; Def. Reply 4-9).

Plaintiffs argue that the forum selection clause is unenforceable because they did not receive or have any notice of the Terms and Conditions at the time that they agreed to the Order Forms.  (*See* Plaintiffs' Memorandum of Law in Support of Opposition to Defendant's Motion to Transfer ("Pla. Brief"), Docket Entry No. 24-5, 9-14).  Plaintiffs allege that Defendant engages in an egregious business practice of knowingly withholding full disclosure of the Terms and Conditions.  Plaintiffs further assert that the factors used to analyze a motion to transfer under § 1404(a) weigh against a transfer here. (*See* Pla. Brief 7-11, 25-33).

3

### A. Michelle Winick

Ms. Winick is an interior designer. After two meetings with Defendant's salesperson, Craig De Vito, she agreed to purchase advertising on YellowPages.com. She signed an electronic signature box at the bottom of the Order Form on Mr. De Vito's laptop computer screen. (*See* De Vito Decl., Docket Entry No. 23-11, ¶ 7). Ms. Winick testified that she did not see any reference to the Terms and Conditions on the screen. (*See* Winick Cert., Docket Entry No. 24-3, ¶ 4). The parties dispute whether Mr. De Vito gave Ms. Winick a hard copy of the Terms and Conditions at the time she signed the Order Form. (*See* De Vito Decl. ¶ 7; Winick Cert. ¶¶ 5, 7). Both parties agree that a complete contract consisting of the Order Form and Terms and Conditions was e-mailed to her a few days after she signed the Order Form and that Ms. Winick subsequently paid her bills to YellowPages.com for the services specified in the Order Form. (*See* De Vito Decl. ¶ 8; Winick Cert. ¶ 7; Def. Reply 6).

### B. Michael Gidro

Michael Gidro is a practicing attorney. He met with Defendant's salesperson, Cheryl D'Elia, and signed an electronic signature box on the Order Form on Ms. D'Elia's laptop computer. An electronic version of the complete contract, including the Terms and Conditions, was immediately sent to Mr. Gidro's e-mail address. (*See* D'Elia Decl., Docket Entry No. 23-13, ¶ 4). Shortly after, Ms. D'Elia noticed errors in the Order Form and sent Mr. Gidro a revised contract with the same Terms and Conditions attached. A couple of days later, Mr. Gidro signed the signature page of the revised contract and faxed only that page to Ms. D'Elia. (*See* D'Elia Decl. ¶¶ 6-9).

4

### C. Al Kowalski

Mr. Kowalski is a plumber and inspector. He contacted Defendant to inquire about advertising opportunities. He testified that he faced a high pressure sales pitch by a telephone sales representative, Royce Brown, who pressured him into orally assenting to certain terms and conditions that were not fully discussed during the recorded conversation. Mr. Kowalski claims that he orally assented to the Terms and Conditions only because he was misled by the representative to believe that he could later accept or reject the contract after reviewing a facsimile of it. After reading the facsimile of the contract, including the Terms and Conditions, Mr. Kowalski tried to terminate any relationship with Defendant, but Defendant told him that he was bound by the contract. (*See* Kowalski Cert., Docket Entry No. 24-1).

### III. ANALYSIS

#### A. Legal Standard for Transfer

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The Court is given broad discretion in deciding a motion to transfer, to exercise an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 23 (1988). The analysis under § 1404 is flexible and must be made on the unique facts of each case. *See Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 479 (D.N.J. 1993).

To decide whether transfer is appropriate in this case, the Court must first determine whether the New York forum selection clause contained within the Terms and Conditions is valid and

enforceable. In the Third Circuit, forum selection clauses are presumptively valid and enforceable. *Reynolds Publrs, Inc. v. Graphics Fin. Group*, *Ltd.,* 938 F.Supp. 256, 263 (D.N.J. 1996). Such clauses will generally be enforced unless the objecting party establishes that (1) the clause is the result of fraud or overreaching; (2) enforcement would violate strong public policy of the enforcing forum; or (3) enforcement would, in the particular circumstances of the case, result in litigation so seriously inconvenient as to be unreasonable. *Id.* (quoting *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983)).

      **B.**     **The New York Forum Selection Clause is Valid and Enforceable**

            **1.**     **The Clause is Not the Result of Fraud or Overreaching**

Plaintiffs attempt to establish that the forum selection clause is the result of fraud or overreaching. Plaintiffs assert that the provisions of the Terms and Conditions were not set forth on the Order Form, and they therefore were not given the opportunity to see or review the entire contract containing the forum selection clause before signing the Order Form. Because they were fraudulently induced into providing assent to a truncated contract that excluded the Terms and Conditions, Plaintiffs argue that the forum selection clause is unenforceable.

When a party asserts overreaching as a defense to a forum selection clause, that party must demonstrate that the forum selection provision itself, and not the entire contract, is a product of overreaching. *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974); *Moneygram Payment Sys., Inc. v. Consorcio Oriental, S.A.*, 65 Fed. Appx. 844, 847 (3d Cir. 2003) ("[T]he mere allegation of fraudulent conduct does not suspend operation of a forum selection clause. Rather, the proper inquiry is whether the forum selection clause is the result of 'fraud in the inducement of the [forum

6

selection] clause itself.'") (citation omitted); *Nat'l Micrographics Sys., Inc. v. Canon U.S.A., Inc.* 825 F.Supp. 671, 675 (D.N.J. 1993). Plaintiffs argue that "each and every clause in the Terms and Conditions, including the venue clause, ...was withheld from Plaintiffs by, and only agreed to by them on account of, Defendant's fraud." (*See* Pla. Brief 20-21). In addition, Plaintiffs' CFA claim alleges that Defendant's practice of providing the Terms and Conditions after the Order Form has been signed constitutes fraud and overreaching. Thus, Plaintiffs' allegations of fraud and overreaching are directed to the contract as a whole, and not to the forum selection clause specifically, rendering this argument meritless. (*See id.*).

Plaintiffs assert that they were not given an opportunity to read the Terms and Conditions because they were not on notice of their existence. However, they have not presented any evidence that this was specifically true with respect to the forum selection clause. Also, Defendant represented during the oral argument held on July 27, 2010 that the Terms and Conditions were placed below the Order Form, meaning Plaintiffs could have scrolled down the laptop screen to see and read those Terms and Conditions. Moreover, the Terms and Conditions were on Defendant's website, and the Third Circuit has held that the availability of terms and conditions online is a sufficient basis for enforcing them, despite the fact that a plaintiff was unaware of them. *See Schwartz v. Comcast Corp.,* 256 Fed. Appx. 515, 520 (3d Cir. 2007).

Forum selection clauses are routinely upheld, even in situations involving adhesion contracts, unequal bargaining power, and the absence of negotiations over the clause. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 594-95 (1991) (holding that forum selection clause on back of cruise ticket was enforceable despite lack of bargaining over the terms of the clause). Courts also

have recognized transactions where consumers made purchases prior to getting the detailed terms of the contract, noting that an insurance buyer pays the premium prior to getting the policy; a traveler pays for airplane or cruise tickets before receiving and being bound by the terms of the ticket; and a purchaser is bound by the terms located inside a product packaging which are accessible after the sale has been consummated. *See In re Samsung Electronics America, Inc. Blu-Ray Class Action Litig.*, No. 08-0663, 2008 WL 5451024, at *3-4 (D.N.J. Dec. 31, 2008) (enforcing terms and conditions included with product packaging); *Pollstar v. Gigmania Ltd.*, 170 F.Supp.2d 974, 981-82 (E.D. Cal. 2000) (holding that sometimes entering into a contract by using a service without first seeing the terms and browser wrap license agreement may be valid and enforceable); *see also ProCD, Inc. v. Zeidenberg,* 86 F.3d 1447, 1449-51 (7th Cir. 1996) (finding that a buyer who fails to reject the terms of a computer software shrinkwrap license contained inside the packaging after having an opportunity to review it has effectively accepted the contract by using the software).

This Court has previously held that allegations that the terms of the contract were non-negotiable or that plaintiff was not given enough time to review the contract are not enough to set aside the forum selection clause, absent allegations that negotiations were attempted and rebuffed. *See Pappalardo v. Advent Product Dev., Inc.*, No. 06-4697, 2007 WL 1296652, at *3 (D.N.J. Apr. 30, 2007); *Mathews v. Rescuecom Corp.*, No. 05-4834, 2006 WL 414096, at *6 (D.N.J. Feb. 16, 2006). Without more, a party's failure to carefully read a contract will not invalidate a forum selection clause as overreaching. *See Park Inn Int'l., LLC v. Mody Enters., Inc.*, 105 F.Supp.2d 370, 374-75 (D.N.J. 2000) (failure to read a contract will not excuse a party who signs it, nor will the party's ignorance of its obligation); *Wilson of Wallingford, Inc. v. The Reliable Data*

*Sys., Inc.*, No. 95-6686, 1995 U.S. Dist. LEXIS 18191, at *4 (E.D. Pa. Dec. 1, 1995) (failure to read the forum selection clause does not render it invalid); *see also Burcham v. Expedia, Inc.*, No. 07-1963, 2009 U.S. Dist. LEXIS 17104, at *13 (E.D. Mo. March 6, 2009) (plaintiff's failure to read or see the terms of the website was "maybe unfortunate for him" but does not change the outcome that he is bound by the terms of the website's user agreement).

  Regardless of what they knew when they assented to the Order Form, two of the Plaintiffs accepted the forum selection clause through their subsequent conduct. Plaintiff Winick received the Terms and Conditions after signing the Order Form. She never rejected those Terms and Conditions, and her assent to the contract is confirmed by her payments to Defendant for services rendered. *See Schwartz*, 256 Fed. Appx. at 518-19 (holding that both parties performed pursuant to a contract where Comcast provided internet service and the plaintiff paid the monthly fee). As for Plaintiff Gidro, a practicing attorney, he signed a second, revised advertising contract after receiving the Terms and Conditions. It is undisputed that he had the hard copy of the Terms and Conditions attached to the original contract in his possession for at least two days before he signed the revised contract. Therefore, Mr. Gidro had sufficient notice of the Terms and Conditions before he signed and is bound by the revised contract.

  Notably, the individual Plaintiffs here, including Plaintiff Kowalski, are not "powerless" laypeople who were forced into signing the contract. *See Barbuto v. Medicine Shoppe Int'l., Inc.*, 166 F.Supp.2d 341, 346-47 (W.D. Pa. 2001) (noting that plaintiffs chose to contract with the defendant and were not powerless employees who were pressured into signing form contracts). Instead, they are small business owners who sought and signed up for Defendant's services. It is not

9

reasonable for Plaintiffs to have assumed that the stand alone Order Form constituted the entire contract with Defendant. *See Schwartz*, 256 Fed. Appx. at 519-20 (finding that it is impossible to infer that a reasonable adult would believe that his contract with Comcast consisted entirely of a single promise regarding his internet service order).

With respect to Mr. Kowalski, Defendant concedes that he stands on different footing than the other Plaintiffs because he rejected the Terms and Conditions shortly after receiving them from the telephone sales representative. (*See* Kowalski Cert. ¶¶ 14-15; Def. Reply 7). Nonetheless, for reasons of efficiency and conservation of judicial resources, the Court finds that his case should be tried with those of the other Plaintiffs in this putative class action, as explained further below.

### 2. Enforcement Would Not Violate Strong Public Policy of the Enforcing Forum

Enforcement of the forum selection clause would not violate the public policy of New Jersey. In fact, New Jersey has a policy that favors the enforcement of forum selection clauses. *See Lester v. Gene Exp., Inc.*, No. 09-0403, 2009 WL 3757155 (D.N.J. Nov. 10, 2009); *Cadapult Graphic Sys., Inc. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 566 (D.N.J. 2000). Plaintiffs argue, however, that the forum selection clause (1) does not apply to their CFA claim and (2) should not be enforced because it would violate New Jersey's "well-articulated and strong public policy of protecting its citizens from deceptive marketplace practices . . . codified in the NJCFA." (*See* Pla. Brief 29). Neither argument is persuasive.

First, Plaintiffs claim that their CFA claim falls outside the Terms and Conditions because it is "based on facts separate and apart from any purported contractual relationship and is brought pursuant to the NJCFA. Indeed, Plaintiffs' tort claim is brought under a statute specifically crafted

by the New Jersey state legislature to provide recourse for consumers victimized by fraudulent business practices such as the Defendant's." (*See* Pla. Brief 23) (internal citations omitted). The Third Circuit has recognized that claims arising out of a business relationship, as here, may be subject to the forum selection clause. *See Crescent Int'l., Inc. v. Avatar Communities, Inc.*, 857 F.2d 943, 944 (3d Cir. 1988) (forum selection clause broadly applies to breach of contract claim and related tort claims); *see also Nat'l Micrographics Sys., Inc.*, 825 F.Supp. at 678. Plaintiffs' tort claim alleges that Defendant engages in fraud and misrepresentation during the initial formation of the advertising contract. Thus, Plaintiffs' CFA claim, like their breach of contract claim, falls within the scope of the forum selection clause. *See Wyeth & Bro. Ltd. v. Cigna Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997) (holding that the forum selection clause language "arising ...in relation to" an agreement applies broadly and is not limited to disputes growing out of the agreement); *Verizon New Jersey, Inc., v. DMJM Harris, Inc.*, No. 08-3028, 2009 WL 1283173, at *3 (D.N.J. May 1, 2009) (finding that tort claims were subject to the forum selection clause where the facts surrounding the contract claims were intertwined with the facts surrounding the professional malpractice claim).

Second, Plaintiffs argue that New Jersey public policy would be "undermined" by the use in this case of New York consumer protection law, which provides consumers - and particularly businesses - with fewer remedies than New Jersey law. (*See* Pla. Brief 29). The issue currently before this Court, however, is the proper forum for the dispute rather than the question of which state's law governs. The "potential" future argument by Defendant that New York law governs this case (*see* Pla. Brief 29) is not a matter for resolution in the instant motion.

11

Further, Defendant has conceded and placed on the record during the oral argument that under settled law, the transferee court must apply the same conflict of law rules that would have been applied by the transferor court. The Court notes that the Southern District of New York is able to correctly analyze and apply New Jersey's conflict of law rules, as well as the CFA.

### 3. Enforcement would Not Result in Litigation So Seriously Inconvenient as to be Unreasonable

Because both parties admit that enforcement of the forum selection clause will not result in great inconvenience, this factor cannot justify the invalidation of the clause.

### C. The Private and Public Factors of § 1404(a) Support Defendant's Motion

Given that a plaintiff's choice of venue generally should not be lightly disturbed, the defendant bears the burden of establishing the need for transfer absent a valid forum selection clause. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Where a forum selection clause is valid, "the plaintiffs bear the burden of demonstrating why they should not be bound by their contractual choice of forum." *Id.* at 880. Here, having decided that the clause is valid, the Court now turns to the appropriateness of transferring the action to the Southern District of New York.

In deciding whether to transfer an action under section 1404(a), this Court must exercise discretion and consider the three factors enumerated in the statute - convenience of parties, convenience of witnesses, and the interests of justice - and "all relevant factors to determine whether on balance litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Id.* at 879 (internal citation omitted). Indeed, the Court has broader discretion in the application of § 1404(a) than it would have under the doctrine of forum non conveniens. *Anschell v. Sackheim,* 145 F.Supp. 447, 451 (D.N.J. 1956).

12

The Third Circuit has provided a list of additional private and public factors that courts should consider when deciding whether to transfer an action. *Jumara,* 55 F.3d at 879-80. The private interests include: "plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses - but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.* at 879 (internal citations omitted). The public interests include: "the enforceability of the judgment; practical considerations that could make the trial easy; expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* (internal citations omitted).

With respect to the private interests, it is clear that Plaintiffs prefer New Jersey as a forum and Defendant, New York. Plaintiffs' main arguments are that they are residents of New Jersey, that Defendant did not have a New Jersey sales branch until November of 2008, and that events giving rise to this action occurred in New Jersey, where Defendant sold nearly $10 million worth of advertising to New Jersey advertisers. (*See* Pla. Brief 26-28). However, Plaintiffs do not argue that they or their witnesses will be physically or financially inconvenienced if this case is transferred to the Southern District of New York and have conceded the close proximity of the two jurisdictions. Therefore, while the plaintiff's choice of forum is ordinarily accorded deference, given that the

parties have entered into a contract that includes a valid forum selection clause and that Plaintiffs have failed to override the contractually agreed upon forum, the forum selection clause here deems New York to be the preferred forum. *Wall St. Aubrey Golf, LLC v. Aubrey*, 189 Fed. Appx. 82, 85 (3d Cir. 2006).

With regard to the public factors, as discussed above, Plaintiffs argue that it is in the public interest that this case be tried in New Jersey because they are bringing claims under a New Jersey statute, which better protects its citizens from deceptive marketplace practices than the comparable New York law does. (*See* Pla. Brief 29-30). Plaintiffs also challenged New York courts' familiarity with the CFA and cited potential delay in the proceedings if the case is transferred. Nevertheless, Defendant emphasizes that enforcement of the forum selection clause would not violate any New Jersey public policy by pointing out that settled law requires the transferee court to apply the conflict rules of the transferor forum. Defendant has explained that Plaintiffs' breach of contract claim will be governed by New York law, while their CFA claim will be governed by New Jersey law. (*See* Def. Reply 14).

The Court also notes that Defendant is not seeking to dismiss the case, but only to transfer this putative class action to another venue pursuant to the forum selection clause. Plaintiffs asserted at oral argument that their CFA claim is the core allegation here, with the breach of contract claim only "made in the alternative" in the First Amended Complaint, and therefore this is a New Jersey-specific case. Nonetheless, as evidenced by Plaintiffs' counsel's filing of similar claims in the Southern District of California, the Court recognizes that this case is not a New Jersey-centric case. Therefore, the Southern District of New York is the appropriate venue.

Finally, with respect to Mr. Kowalski, who stands on different footing than the other Plaintiff, this Court scrutinized the interests of justice factor provided by section 1404(a) more closely. As discussed above, this Court finds that Ms. Winick and Mr. Gidro have assented to the forum selection clause, and it is therefore in the interests of justice that their cases be transferred to the Southern District of New York. Mr. Kowalski, however, immediately sought to revoke his assent upon reviewing the Terms and Conditions. The Court finds that the interests of justice dictate that Mr. Kowalski's case should be transferred to the Southern District of New York as well.

The Court has previously held that where related lawsuits exist, "it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court and not simultaneously before two tribunals." *See Ricoh,* 817 F.Supp. at 487. The Court favors conservation of judicial resources and efficiency. Therefore, litigation of related claims in the same tribunal is preferred because: it facilitates efficient, economical and expeditious pretrial discovery; saves the time and expense for parties and potential witnesses of appearing at trial in multiple courts; avoids duplicitous litigation involving the filing of records in multiple courts; and eliminates the possibility of inconsistent results. All Plaintiffs allege the same claims here, namely that Defendant violated the CFA and breached its contracts with Plaintiffs.

A plaintiff's choice of forum is a preference, and not a right. *Id.* at 480. Courts have consistently held that the weight accorded to a plaintiff's choice of forum is considerably reduced in class actions. *See Bolton v. Tesoro Petroleum Corp.*, 549 F.Supp. 1312, 1313-14 (E.D. Pa. 1982); *see also Koster v. Lumbermens Mut. Casualty Co.,* 330 U.S. 518, 524 (1947). The Plaintiffs here seek to represent hundreds or thousands of potential plaintiffs, which weakens Mr. Kowalski's

15

individual claim that this Court is the appropriate venue for his lawsuit. Accordingly, judicial efficiency mandates that the Court transfer this action as it pertains to all of the Plaintiffs. *See Wyndham Assocs. v. Bintliff,* 398 F.2d 614, 619 (2d Cir. 1968).

The existence of a valid, mandatory forum selection clause receives considerable weight. Coupled with the interests of justice and other neutral factors above, this Court should transfer this action to the Southern District of New York.

### IV. CONCLUSION

For the reasons set forth above, the undersigned recommends that the District Court **GRANT** Defendant's motion to transfer venue to the Southern District of New York. Pursuant to Local Civil Rule 72.1, the parties have fourteen days from receipt of this Report and Recommendation to file and serve any objections.

s/ Esther Salas
**ESTHER SALAS**
**UNITED STATES MAGISTRATE JUDGE**