UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
AL KOWALSKI d/b/a KOWALSKI :    Civil Action No. 1:10-cv-07318-PGG
PLUMBING, MICHELLE WINICK d/b/a :
MICHELLE WINICK DESIGN and :
MICHAEL GIDRO Individually and on Behalf :    <u>CLASS ACTION</u>
of All Others Similarly Situated, :
                    :    PLAINTIFFS' REPLY IN SUPPORT OF
              Plaintiffs, :    MOTION FOR CLASS CERTIFICATION
                    :
      vs. :
                    :
YELLOWPAGES.COM, LLC, :
                    :
              Defendant. :
                    :
———————————————————— x

# TABLE OF CONTENTS

**Page**

I.      Defendants Ignore the Standards Governing Class Certification .......................................1

II.     "Commonality" is Established by a Preponderance of the Evidence ................................2

III.    As Defendant Identifies No Actual Conflict Between Plaintiffs and the Absent
        Class Members, "Typicality and "Adequacy" Are Satisfied ...............................................4

        A.      Defendant Misapplies the "Ascertainable Loss" Element of the NJCFA
                with Respect to Plaintiff Kowalski ........................................................................4

        B.      Defendant's Argument that a Unique Defense Against Plaintiff Gidro
                Makes Him Inadequate is Bizarre ..........................................................................6

        C.      Defendant's Claim that a Countersuit for "Breach of the Forum Selection
                Clause" Raises the Specter of a Conflict is Equally Specious ...............................7

IV.     "Predominance" is Established by a Preponderance of the Evidence ...............................8

        A.      The NJCFA Damages Claim is Susceptible to Class-Wide Evidence and
                Methods of Proof ..................................................................................................12

        B.      The NJCFA Equitable Relief Claim is Susceptible to Class-Wide
                Evidence and Methods of Proof ............................................................................15

        C.      The Breach of Contract Claim is Susceptible to Class-Wide Evidence and
                Methods of Proof ..................................................................................................16

        D.      "Superiority" is Established by a Preponderance of the Evidence .......................19

# TABLE OF AUTHORITIES

Page

## CASES

*Aimis Art Corp. v. N. Trust Secs., Inc.*,
   641 F. Supp. 2d 314 (S.D.N.Y. 2009)......................................................................5

*Baffa v. Donaldson*,
   222 F.3d 52 (2d Cir. 2000)..................................................................................7

*Barry v. Arrow Pontiac, Inc.*,
   494 A.2d 804 (1985)...................................................................................3, 13

*Baughman v. Pall Corp.*,
   250 F.R.D. 121 (E.D.N.Y. 2008)...........................................................................4

*Board of Trs. of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
   269 F.R.D. 340 (S.D.N.Y. 2010) ..........................................................................19

*Calabrese v. CSC Holdings, Inc.*,
   No. 02-CV-5171 (DLI)(JO), 2009 WL 425879
   (E.D.N.Y. Feb. 19, 2009)...................................................................................4

*Camafel Bldg. Inspections, Inc. v. BellSouth Adver. & Publ'g Corp.*,
   No. 1:06-CV-1501-JEC, 2008 WL 649778
   (N.D. Ga. Mar. 7, 2008).....................................................................................7

*Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco
   Managed Care, L.L.C.*,
   433 F.3d 181 (2d Cir. 2005)...............................................................................5

*Charrons v. Pinnacle Group NY LLC*,
   269 F.R.D. 221 (S.D.N.Y. 2010) .......................................................................2, 3

*Cox v. Sears Roebuck & Co.*,
   647 A.2d 454 (N.J. 1994)................................................................................3, 5

*Cromer Fin. Ltd. v. Berger*,
   205 F.R.D. 113 (S.D.N.Y. 2001) ........................................................................19

*DeMarco v. Robertson Stephens Inc.*,
   228 F.R.D. 468 (S.D.N.Y. 2005) ..........................................................................1

*Deposit Guar. Nat'l Bank v. Roper*,
   445 U.S. 326 (1980)....................................................................................5, 19

- ii -

Page

*Dillon v. U-A Columbia Cablevision of Westchester, Inc.*,
   790 N.E. 2d 1155 (2003).................................................................................7

*Francis v. A&E Stores, Inc.*,
   No. 06 Civ. 1638 (CS)(GAY), 2008 U.S. Dist. LEXIS 83369
   (S.D.N.Y. Oct. 16, 2008) ...........................................................................10

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith*,
   903 F.2d 176 (2d Cir. 1990)..........................................................................6

*Gates v. Rohm & Haas Co.*,
   248 F.R.D. 434 (E.D. Pa. 2008).................................................................19

*General Tel. Co. of the Sw.*,
    457 U.S. 147, 159 (1982)...............................................................................9

*Hines v. Overstock.com, Inc.*,
   668 F. Supp. 2d 362 (E.D.N.Y. 2009) ......................................................16

*Hoffman v. Asseenontv.com*,
   962 A.2d 532 (N.J. App. Div. 2009)..............................................................5

*In re Alstom SA Sec. Litig.*,
   253 F.R.D. 266 (S.D.N.Y. 2008) ..................................................................3

*In re Am. Express Merchants' Litig.*,
   554 F.3d 300 (2d Cir. 2009)........................................................................20

*In re Amaranth Nat'l Gas Commodities Litig.*,
   269 F.R.D. 366 (S.D.N.Y. 2010) .......................................................... *passim*

*In re Avon Sec. Litig.*,
   No. 91 Civ. 2287 (LMM), 1998 U.S. Dist. LEXIS 18642
   (S.D.N.Y. Nov. 30, 1998)...............................................................................6

*In re Currency Conversion Fee Antitrust Litig.*,
   230 F.R.D. 303 (S.D.N.Y. 2004)...................................................................7

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   245 F.R.D. 147 (S.D.N.Y. 2007) ...................................................................3

*In re Initial Pub. Offering Sec. Litig.*,
   471 F.3d 24 (2d Cir. 2006)......................................................................1, 12

619424_1

**Page**

*In re NASDAQ Market-Makers Antitrust Litig.,*
  169 F.R.D. 493 (S.D.N.Y. 1996) .......................................................................7

*In re Nat'l Credit Mgmt. Group, L.L.C.,*
  21 F. Supp. 2d 424 (D.N.J. 1998) .....................................................................3

*In re Samsung Elec. Am., Inc. Blue-Ray Class Action Litig.,*
  No. 08-0663 (JAG), 2008 WL 5451024
  (D.N.J. Dec. 31, 2008) .....................................................................................16

*In re Vivendi Universal, S.A. Sec. Litig.,*
  242 F.R.D. 76 (S.D.N.Y. 2007) ........................................................................8

*Katz v. Live Nation, Inc.,*
  No. 09-3740(MLC), 2010 U.S. Dist. LEXIS 91310
  (D.N.J. Sept. 2, 2010) .......................................................................................3

*Kowalski v. Yellowpages.com, LLC.,*
  No. 09-2382(PGS), 2010 WL 3323749
  (D.N.J. Aug. 18, 2010) ....................................................................................16

*L-3 Commc'ns Corp. v. OSI Sys.,*
  No. 02 Civ. 9144 (DC), 2005 U.S. Dist. LEXIS 4935
  (S.D.N.Y. Mar. 28, 2005) ...............................................................................10

*Lapin v. Goldman Sachs & Co.,*
  254 F.R.D. 168 (S.D.N.Y. 2008) ....................................................................19

*Lee v. Carter-Reed Co., L.L.C.,*
  4 A.3d 561 (N.J. 2010) ...............................................................................5, 20

*Moore v. PaineWebber, Inc.,*
  306 F.3d 1247 (2d Cir. 2002) ......................................................8, 10, 12, 13

*Muhammad v. County Bank of Rehoboth Beach, Del.,*
  912 A.2d 88 (N.J. 2006) ..................................................................................20

*Newman v. RCN Telecom Servs., Inc.,*
  238 F.R.D. 57 (S.D.N.Y. 2006) ........................................................................7

*Padilla v. Maersk Line, Ltd.,*
  271 F.R.D. 444 (S.D.N.Y. 2010) ......................................................................7

- iv -

**Page**

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)............................................................................................................19

*Quoka v. City of W. Haven*,
    64 Fed. Appx. 830 (2d Cir. 2003) ......................................................................................8

*Ravenell v. Avis Budget Car Rental, LLC.*,
    No. 08-cv-2113(SLT)(ALC), 2010 U.S. Dist. LEXIS 72563
    (E.D.N.Y. July 19, 2010)..................................................................................................10

*Roper v. Consurve, Inc.*,
    578 F.2d 1106 (5th Cir. 1978) ............................................................................................6

*Shankroff v. Advest, Inc.*,
    112 F.R.D. 190 (S.D.N.Y. 1986) ......................................................................................13

*Smajlaj v. Campbell Soup Co.*,
    No. 10-1332(JBS/AMD), 2011 U.S. Dist. LEXIS 30852
    (D.N.J. Mar. 23, 2011).......................................................................................................5

*Smith v. Trusted Universal Standards in Elec. Transactions, Inc.*,
    No. 09-5567 (RBK/KMW), 2011 U.S. Dist. LEXIS 26757
    (D.N.J. Mar. 15, 2011).....................................................................................................14

*Spagnola v. Chubb*,
    264 F.R.D. 76 (S.D.N.Y. 2010) ........................................................................................8

*Specht v. Netscape Commc'ns Corp.*,
    306 F.3d 17 (2d Cir. 2002)........................................................................................16, 20

*Steinberg v. Nationwide Mut. Ins. Co.*,
    224 F.R.D. 67 (E.D.N.Y. 2004)..........................................................................................2

*Thiedemann v. Mercedes-Benz USA, LLC*,
    872 A.2d 783 (N.J. 2005)....................................................................................................5

*Trief v. Dun & Bradstreet Corp.*,
    144 F.R.D. 193 (S.D.N.Y. 1992) ........................................................................................6

*Turf Lawnmower Repair v. Bergen Record Corp.*,
    655 A.2d 417 (N.J. 1995)..................................................................................................13

*Weinberg v. Sprint*,
    801 A.2d 281 (N.J. 2002)....................................................................................................5

- v -

Page

*Willix v. Healthfirst, Inc.,*
No. 07-CV-1143 (ENV)(RER), 2009 U.S. Dist. LEXIS 114818
(E.D.N.Y. Dec. 4, 2009) ............................................................................20

*Yeboah v. Cent. Parking Sys.,*
No. 06 CV 0128 (RJD)(JMA), 2007 U.S. Dist. LEXIS 81256
(E.D.N.Y. Oct. 31, 2007) ...........................................................................5


**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
Rule 23 ....................................................................................................1
Rule 23(a)(2) ............................................................................................2
Rule 23(b)(2) ............................................................................................4
Rule 23(b)(3) .......................................................................................4, 20
Rule 23(b)(3)(D) .....................................................................................20
Rule 23(c)(1) ............................................................................................1

New Jersey Statute
§56:8-2 ....................................................................................................13


**SUSPECTS**

903 F.2d 176, 180 (2d Cir. 1990) ....................................................................6, 7

457 U.S. 147, 159 (1982) ...............................................................................19

- vi -

## I.   Defendants Ignore the Standards Governing Class Certification

The Court should reject Defendant's attempt to turn this motion into a mini-trial on the merits.   "[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision."  Fed. R. Civ. P. 23(c)(1) Adv. Comm. Notes 2003.  The Court's role is to "determine whether each Rule 23 requirement has been met, just as the judge would resolve a dispute about any other threshold prerequisite for continuing a lawsuit."  *In re Amaranth Nat'l Gas Commodities Litig.*, 269 F.R.D. 366, 378 (S.D.N.Y. 2010); *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006) ("*IPO*").   Thus, "[t]he question for the district court at the class certification stage is whether plaintiffs' . . . evidence is sufficient to demonstrate common questions of fact warranting certification of the proposed class, not whether the evidence will ultimately be persuasive."  *DeMarco v. Robertson Stephens Inc.*, 228 F.R.D. 468, 470 (S.D.N.Y. 2005).

Although "the fact that a Rule 23 requirement might overlap with an issue on the merits does not avoid the court's obligation to make a ruling as to whether the requirement is met, . . . such a circumstance might appropriately limit the scope of the court's inquiry at the class certification stage."  *IPO*, 471 F.3d at 27.   Further emphasizing that the class certification analysis should not consist of a trial on the merits, the Second Circuit cautions against requiring "'findings' because that word usually implies that a district judge is resolving a disputed issue of fact."  *Id*. at 40.  Rather, "[a] legal standard, *e.g.* numerosity, commonality, or predominance is being applied to a set of facts, some of which might be in dispute."  *Id*.  To that end, District Courts are afforded "considerable discretion" in order to "avoid the risk that a Rule 23 hearing will extend into a protracted mini-trial of substantial portions of the underlying litigation."  *Id*. at 41.

Here, a preponderance of the evidence establishes that each and every Rule 23 requirement is met.  Plaintiffs' evidence consists of internal documents, corporate designee testimony, expert

opinions and testimony and affidavits from former salespeople, showing a common scheme perpetrated against the class members in a uniform manner.  In turn Defendant proffers evidence almost entirely consisting of self-serving declarations by its current employees.

## II.      "Commonality" is Established by a Preponderance of the Evidence

Defendant concedes that "'the commonality requirement of Rule 23(a)(2) is usually a minimal burden for a party to shoulder.'"  Def's Mem. at 27 (citation omitted).  And, it does not contest that only a single question of law or fact need be common to the class.  *Charrons v. Pinnacle Group NY LLC*, 269 F.R.D. 221, 230 (S.D.N.Y. 2010); *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 72 (E.D.N.Y. 2004).  Plaintiffs have identified no less than 10 questions of law and fact that courts handling individuals lawsuits would be required to answer.  For the "listing product," these common questions include: whether a valid contract exists when the Terms & Conditions ("T&C") are provided only after the consumer assents to the order; whether the sales pitch and/or written sales materials contain material misrepresentations or omissions; whether the sales pitch and/or sales materials have the capacity to mislead; whether Defendant's conduct constitutes a breach of contract and/or violation of the NJCFA; and the remedies available to an injured plaintiff. Pltfs' Mem. at 15-16.  For the "guaranteed clicks" product, additional common questions include: can Defendant perform the technical functions as represented; do they comport with industry standards; and does use of the New York DMA provide "local, targeted and qualified" clicks to New Jersey consumers.  *Id*.

In response, citing no legal or evidentiary support, Defendant asserts the class definition is overly-broad because it includes consumers who purchased their "click to call" product and who renewed their advertising.  Def's Mem. at 28.  "It is axiomatic, however, that lead or representative plaintiffs in class actions are not required to have standing to bring all claims asserted in the

- 2 -

Complaint." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 245 F.R.D. 147, 163 (S.D.N.Y. 2007); *In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 273 (S.D.N.Y. 2008) (same).[1]

Defendant next asserts that although the question whether the sales pitch is misleading may be common, "the ***answers*** to these questions are individualized" and depend upon each consumer's sophistication and experience with the products purchased. Def's Mem. at 28-29. Putting aside that this argument addresses the predominance requirement – not commonality – it too is wrong. To begin, Defendant ignores entirely that the "capacity to mislead is the prime ingredient of deception or an unconscionable commercial practice." *Katz v. Live Nation, Inc.*, No. 09-3740(MLC), 2010 U.S. Dist. LEXIS 91310, at *11 (D.N.J. Sept. 2, 2010). The question is "whether the ad itself is misleading to the average consumer, not whether it can later be explained to the more knowledgeable, inquisitive consumer." *Barry v. Arrow Pontiac, Inc.*, 494 A.2d 804, 810 (1985). As such, "[a] practice can be unlawful even if no person was in fact misled or deceived thereby." *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994); *In re Nat'l Credit Mgmt. Group, L.L.C.*, 21 F. Supp. 2d 424, 449 (D.N.J. 1998).

Even were that not the law, Defendant fails to explain how resolution of any of the identified common questions turn on a given consumer's sophistication or experience. Indeed, questions concerning the impact of not providing material terms until after the contract is purportedly entered and the scope of the remedies available under both NJCFA and contract law are common legal questions. And, Defendant's technological ability to deliver the promised clicks will be resolved through expert opinion – not class member – testimony. *See* Pltfs' Ex. 16 ("Kent Rpt.").

---

[1]     Over-broad class definitions do not result in a denial of certification, but only an adjustment to the class definition. *Charrons*, 269 F.R.D. at 229 (exercising discretion to narrow class definition determined to be overbroad).

**III.     As Defendant Identifies No Actual Conflict Between Plaintiffs and the Absent Class Members, "Typicality and "Adequacy" Are Satisfied**

Defendant erroneously asserts there must be at least one named plaintiff who has "standing" to pursue the claims alleged.  Def's Mem. at 21-22.  But, "typicality does not require that a lead plaintiff have standing to sue on every claim available to all plaintiffs in the class." *Baughman v. Pall Corp.*, 250 F.R.D. 121, 126 (E.D.N.Y. 2008).   Class representatives must simply be (as plaintiffs are) members of the Class they seek to represent.  Mr. Kowalski (who after receiving the previously undisclosed contract terms sought to cancel his order, at which point Defendant turned him over to a collections agency) seeks certification of a Rule 23(b)(2) equitable relief class.[2] Plaintiff Gidro (who purchased the Listing Product and the Guaranteed Clicks Product) and Plaintiff Winick (who purchased the Listing Product), seek certification of a Rule 23(b)(3) damages class for Defendant's failure to deliver what it promised.

**A.     Defendant Misapplies the "Ascertainable Loss" Element of the NJCFA with Respect to Plaintiff Kowalski**

Despite having instituted collections proceedings and ultimately suing him, Defendant asserts Mr. Kowalski lacks ascertainable loss under the NJCFA in that he refused to pay under the contract.[3]

---

[2]     Defendant's assertion that plaintiffs abandoned their claims for declaratory and injunctive relief (Def's Mem. at 24) is unsupported.  As evidenced by the fact that Mr. Kowalski has not paid the disputed fees its assertion that the recovery of monetary damages predominates over equitable relief is incorrect as to him and those class members against whom it seeks to enforce the purported contracts.  Moreover, Defendant's reliance on *Calabrese v. CSC Holdings, Inc.*, No. 02-CV-5171 (DLI)(JO), 2009 WL 425879, at *23 (E.D.N.Y. Feb. 19, 2009), is misplaced.  There, the Court did not decline to certify a class under Rule 23(b)(2) because damage claims were alleged, but because four of the seven plaintiffs (and almost all of the absent class members who submitted affidavits in support of class certification) had entered into settlement agreements, thus had virtually nothing to gain and little incentive to prosecute equitable relief claims.  *Id.*

[3]     Defendant claims a purported disavowal of damages by Mrs. Winick leads to her disqualification as well.  Def's Mem. at 23-24.  However, Mrs. Winick only disavowed monetary recovery beyond that available to the other class members – a requirement for a class representative.

- 4 -

Def's Mem. at 22.  An "ascertainable loss" exists so long as the injury suffered is not "hypothetical or illusory."  *Lee v. Carter-Reed Co.*, *L.L.C.*, 4 A.3d 561, 577 (N.J. 2010); *Smajlaj v. Campbell Soup Co.*, No. 10-1332(JBS/AMD), 2011 U.S. Dist. LEXIS 30852, at \*37 (D.N.J. Mar. 23, 2011). Moreover, "an ***improper debt or lien*** against a consumer-fraud plaintiff may constitute a loss under the Act, because the consumer is not obligated to pay an indebtedness arising out of conduct that violates the Act." *Cox*, 647 A.2d at 454.[4]  Here, the harm to Mr. Kowalski is not hypothetical or illusory.  The fact that Defendant initiated collections proceedings to recover $3,708.91 demonstrates the loss is both quantifiable and measurable.  Pltfs' Ex. 45 (collections letter).

Finally, Defendant's attempt to moot Mr. Kowalski's claim by abandoning its countersuit (Def's Mem. at 23 n. 44) does not destroy his standing to represent the Class.  On the contrary, it has long been established that class actions should not be thwarted by a defendant's attempt to "pick off" representative plaintiffs.  *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980); *accord Yeboah v. Cent. Parking Sys.*, No. 06 CV 0128 (RJD)(JMA), 2007 U.S. Dist. LEXIS 81256, at \*7-\*8

---

Pltfs' Ex. 68 at 65:1-24 (references to Pltfs' Exs. 53-75 are to the Pearlman Decl., submitted concurrently).  The Prayer to the First Amended Complaint expressly prays for damages on behalf of Mrs. Winick and the absent class members.  Dkt. No. 16 at 46.

[4]      The cases Defendant cites are inapposite.  In *Hoffman v. Asseenontv.com*, 962 A.2d 532 (N.J. App. Div. 2009), no ascertainable loss was found because the plaintiff had cancelled his order before the transaction was ever processed.  *Id.* at 423.  When Mr. Kowalski attempted to cancel his order, Defendant initiated collections proceedings against him.  Pltfs' Ex. 69 at 128:23-134:1; Pltfs' Ex. 45; Dkt. No. 21 at 20-23.  In *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783 (N.J. 2005), after certifying the class the court granted summary judgment, finding the damages sought were speculative because plaintiff submitted no evidence establishing the existence, let alone the amount, of increased fuel costs.  *Id.* at 794-95.  In *Weinberg v. Sprint*, 801 A.2d 281, 293 (N.J. 2002), a motion to dismiss was granted under the filed rate doctrine.  Neither *Aimis Art Corp. v. N. Trust Secs., Inc.*, 641 F. Supp. 2d 314, 321 (S.D.N.Y. 2009) (a 10b-5 securities case), nor *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 202 (2d Cir. 2005) (an ERISA case), assert claims, or involve a determination of "ascertainable loss," under the NJCFA.

(E.D.N.Y. Oct. 31, 2007).  "The notion that a defendant may short-circuit a class action by paying off the class representatives either with their acquiescence or, as here, against their will, deserves short shrift.  Indeed, were it so easy to end class actions, few would survive."  *Roper v. Consurve, Inc.*, 578 F.2d 1106, 1110 (5th Cir. 1978), *aff'd sub nom.*, *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326 (1980).

### B. Defendant's Argument that a Unique Defense Against Plaintiff Gidro Makes Him Inadequate is Bizarre

Having just argued that Mr. Kowalski is not an appropriate class representative ***because he did not pay***, Defendant reverses course to argue that Mr. Gidro cannot represent the Class ***because he did***.  In making its argument, Defendant omits that the so-called "voluntary payments" were made in response to collections proceedings it instituted against Mr. Gidro.  Pltfs' Ex. 70 at 155:6-157:8.  Contrary to Defendant's assertions, the fact that one proposed class representative (Kowalski) refused to pay the fees and filed an equitable relief claim and another proposed representative (Gidro) paid the challenged fee and filed damage claims, does not make either an inadequate class representative.  It demonstrates that the class members' interests are protected on all fronts.

It is well established that a plaintiff will adequately represent the class, "even though that party may later be barred from recovery by a defense particular to him that would not impact other class members."  *In re Avon Sec. Litig.*, No. 91 Civ. 2287 (LMM), 1998 U.S. Dist. LEXIS 18642, at *18 (S.D.N.Y. Nov. 30, 1998).  Further, the unique defense rule "is intended to protect the plaintiff class, not shield defendants from a potentially meritorious suit."  *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 200 (S.D.N.Y. 1992).  Even *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith*, upon which Defendant heavily relies, recognizes that the "mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification."  903 F.2d 176, 180 (2d Cir. 1990).

- 6 -

Finally, Defendant misstates the nature of the "voluntary payment" doctrine. This doctrine "bars recovery of payments voluntarily made with full knowledge of the facts . . . ." *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 790 N.E. 2d 1155, 1156 (2003). Thus, for Mr. Gidro's claim to be barred, Defendant must establish that the full facts of the fraud were disclosed **before** he signed the advertising Order. *See id.* But, when Mr. Gidro contracted for advertising products he had neither knowledge of the deceptive practices, nor any way of ascertaining the scheme, and Defendant does not contend to the contrary.[5] And of course, Mr. Gidro's payment was not "voluntary" as Defendant initiated collections proceedings against him.

### C.   Defendant's Claim that a Countersuit for "Breach of the Forum Selection Clause" Raises the Specter of a Conflict is Equally Specious

Defendant argues that its counterclaim for attorney fees creates a "possibility" that Mr. Gidro and Mrs. Winick may "be adversely influenced" which creates "'a danger that absent class members will suffer.'" Def's Mem. at 27 (citation omitted). Understandably, no evidence is cited in support of this manufactured conflict. "[S]peculative suggestion[s] of potential conflicts [among the class] is insufficient to defeat class certification." *Padilla v. Maersk Line, Ltd.*, 271 F.R.D. 444, 449 (S.D.N.Y. 2010) (brackets in original); *see also In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 513 (S.D.N.Y. 1996). It is axiomatic that an argument without evidence in support is

---

[5]    In *Gary Plastic*, the class representative was found to be atypical because it repeatedly purchased products from the defendant with knowledge of the fraudulent conduct, a fact not present here. 903 F.2d at 179-80. For the same reason, Defendant's remaining cases are nothing like those here, as Mr. Gidro unsuccessfully sought to cancel his contract a number of times before filing suit. Gidro Tr. 133:19-137:12. *See Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 78 (S.D.N.Y. 2006) (plaintiff "continued to pay his bills without dispute"); *Camafel Bldg. Inspections, Inc. v. BellSouth Adver. & Publ'g Corp.*, No. 1:06-CV-1501-JEC, 2008 WL 649778, at *4 (N.D. Ga. Mar. 7, 2008) *aff'd in part*, 298 Fed. Appx. 822 (11th Cir. 2008); *Baffa v. Donaldson*, 222 F.3d 52, 59-60 (2d Cir. 2000); *In re Currency Conversion Fee Antitrust Litig.*, 230 F.R.D. 303, 308 (S.D.N.Y. 2004).

- 7 -

wholly speculative.  *Quoka v. City of W. Haven*, 64 Fed. Appx. 830, 832 (2d Cir. 2003).  Moreover, a unique defense assertion will bar certification "'only where a full defense is available against an individual plaintiff's action'" and the defense will "'become the focus of the litigation.'"  *Spagnola v. Chubb*, 264 F.R.D. 76, 93-94 (S.D.N.Y. 2010) (citation omitted).  Neither is the case here.

Finally, Plaintiffs are committed to honoring their fiduciary duties in continuing their zealous representation of the Class.  *See* Pltfs' Ex. 70 at 171:12–175:9, Ex. 68 at 84:11–86:25, Ex. 69 at 155:13-158:8.  Indeed, Plaintiffs have litigated this case for more than one-and-a-half years without even the hint of any conflict on the horizon.  *Amaranth*, 269 F.R.D. at 380 (citing duration of the litigation as supporting adequacy of representation).

## IV.   "Predominance" is Established by a Preponderance of the Evidence

The parties agree that predominance is satisfied where "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject to individualized proof."  *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 90 (S.D.N.Y. 2007).  The parties also agree that class certification is appropriate where proof is offered "that the misrepresentations were made pursuant to a written, standardized sales script and that the sales agents participated in a common training program that emphasized uniformity in sales techniques."  *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002).[6]

In addition, while Defendant disagrees with the inferences to be drawn, it does not dispute the majority of the underlying facts.  More specifically, the opposition does not dispute that:

---

[6]     In *Moore*, unlike here, certification was ultimately denied because various scripts were used by the salespeople, containing significant and material variations.  306 F.3d at 1256.

Its salespeople are required to memorize the sales script or they are fired, and its language did not change during the class period (Pltfs' Ex. 7 ("Quinlan Tr.") at 81:14-82:20, 133:13-135:1; Pltfs' Exs. 18-19, 22);

Throughout their employment, its salespeople attended weekly training sessions to reinforce the scripted presentation learned in their initial training (Quinlan Tr. at 31:20-32:1, 95:3-20, 100:10-104:6, 190:23-191:2);

The training included role-playing to teach the salespeople the proper way to deliver the scripted pitch, how to talk to customers, how to overcome common objections customers may raise, and how to close the deal (*id*. 54:8-55:3, 159:21-160:7; Pltfs' Exs. 25-26); and

It trained its salespeople to deliver the same "core" message and follow the same "steps of the sale" regardless whether the customer had 2 or 200 employees (Quinlan Tr. at 93:17-97: 14, 190:16-22; *accord* Pltfs' Ex. 72 at 46:8-11).

Defendant further concedes that memorization of the training script served to educate the salespeople on "'what the sales process should look like'" (Def's Mem. at 17 n.29) and to provide "guidelines for sales representatives to utilize in determining what topics to discuss with [the] potential customer[s]." *Id*. And, it does not challenge that the written sales materials provided to the class members (Pltfs.' Exs. 2-7) were uniform.

In the face of these undisputed facts, Defendant's self serving assertion that it required its salespeople to memorize the script "as a mechanism to *gauge the trainees' dedication* to the program" and that it was "never intended to be utilized in meetings with actual customers" (Def's Mem. at 17) is utterly preposterous. Indeed, Defendant's corporate designee (Mr. Quinlan) has testified that the salespeople received weekly training on the scripts because "it was always core for a selling organization to rehash the steps of the sales." *See* Quinlan Tr. 107:9-12. Further, when handed the script and asked to identify the language used in each of the sales steps, Mr. Quinlan identified the entire script. *See* Quinlan Tr. 133:13-140:19; Pltfs' Ex. 18. In his own handwriting, he identified the language he considered to be the "approach." Quinlan Tr. 136:6-24. He identified the language that consisted of the "fact-finding" component, asking "[i]f 10 people were to search for a local roofer online, they would find your Web site, how many would end up doing business

- 9 -

with you?"  *Id*. at 136:25-137:15.[7]  He identified the language he labeled the "[n]eeds assessment"

and the "presentation" where the products are introduced to the consumer.  *Id*. at 138:9-139:24.  And

he identified the language which he labeled as the "ROI [Return on Investment]" step.  *Id*. at 139:25-

140:19.[8]

In addition, declarations from former sales representatives independently confirm the

extensive training they received to memorize and use the scripted sales pitch, and that they in fact

used the scripted sales pitch in the field.  Pltfs' Exs. 21-23.  In response, Defendant submitted self-

serving declarations from current employees that while they memorized the script (and were required

to do so), they did not make the sales pitch as scripted.[9]  *See* Def's Exs. 16, 18-22, 26-28.  However,

affidavits from current employees are discounted at class certification stage because of the risk of

bias and coercion inherent in current employee testimony.  *See, e.g.*, *Francis v. A&E Stores, Inc.*,

No. 06 Civ. 1638 (CS)(GAY), 2008 U.S. Dist. LEXIS 83369, at *8-*9 (S.D.N.Y. Oct. 16, 2008);

*Ravenell v. Avis Budget Car Rental, LLC.*, No. 08-cv-2113(SLT)(ALC), 2010 U.S. Dist. LEXIS

72563, at *13-*14 (E.D.N.Y. July 19, 2010).  Moreover, as *Moore* explains:  "The fact that sales

agents submitted affidavits that they did not participate in training programs or follow scripts, even if

uncontroverted, is insufficient to demonstrate by itself that the misrepresentations themselves were

not materially uniform."  306 F.3d at 1255.  Suffice it to say that testimony from third-party

---

[7]    This testimony completely contradicts the self-serving claims of Defendant's current employees that they did not ask potential customers how many customers out of 10 they could convert to a sale.  Def's Exs. 14, 20, 25, 26 and 27.

[8]    "It is appropriate to strike a declaration if it 'states legal and factual positions that vary materially with those taken by the corporate representative.'"  *L-3 Commc'ns Corp. v. OSI Sys.*, No. 02 Civ. 9144 (DC), 2005 U.S. Dist. LEXIS 4935, at *4 (S.D.N.Y. Mar. 28, 2005).

[9]    Four additional declarations, including a former Director of Operations and three former sales representatives, refute these self-serving affidavits.  *See* Pltfs' Exs. 63-66.

- 10 -

witnesses having no interest in the outcome of the litigation is more credible than self-serving statements from current employees.

Finally, a comparison of the parties' respective documentary evidence further demonstrates why the proposed Class should be certified.  In their opening brief, plaintiffs submitted 32 internal documents establishing Defendant's common course of conduct, including among other things, the written script, written sales materials, common training the salespeople received, the Morpace Study showing the falsity of the sales pitch, and evidence of Defendant's collections efforts.  In opposition, Defendant cites just five internal documents:

> Training slides (which reinforce the nature of the training its salespeople received) (Def's Ex. 4 );
>
> An "awareness study" (used simply to establish that the Morpace Study was finalized in May 2007) (Def's Ex. 36);
>
> A fax from Mr. Kowalski informing Defendant that he did not want his order processed (Def's Ex. 7);
>
> A "Best Practices" guide (that was not even used in New Jersey ) (Def. Ex. 37);[10] and
>
> A monthly sales report indicating that Mr. Gidro received 378 clicks in a 14 month period (without identifying the source of these clicks) (Def's Ex. 54).[11]

None of these internal documents are relevant to the question whether the sales pitch derived from a uniform script.  Nor do they otherwise contradict Plaintiffs' evidence.

---

[10]    The "Editorial Creation & Best Practices" Document (Def's Ex. 37 at 10-12) is irrelevant to the certification issue, because it has nothing to do with the procedures used in New Jersey.  *See* Pearlman Decl., ¶¶23-39.  Thus it is not surprising that Defendant did not ask a single question about this document at Mr. Kent's deposition.  *Id.*, ¶26.  Moreover, even if this document had some relevance to New Jersey, Mr. Kent explains that it further strengthens his opinion that Defendant is unable to deliver as promised.  Pltfs' Ex. 67.

[11]    The remainder of Defendant's exhibits are pleadings and settlement documents from individual actions filed against Yellowpages.com (Def's Exs. 38-45); the named Plaintiffs' purported contracts (Def's Exs. 6, 9, 11-12 ), which Plaintiffs previously submitted (*see* Pltfs' Exs. 43, 14, 17).

**A.   The NJCFA Damages Claim is Susceptible to Class-Wide Evidence and Methods of Proof**

To prevail on the NJCFA damage claims, Plaintiffs must demonstrate that the sales pitch has the capacity to mislead, and that they and the class members suffered an ascertainable loss.   In undertaking a predominance analysis a Court is to ascertain if a plaintiff's claims are "susceptible to class-wide evidence and systematic proof." *Amaranth*, 269 F.R.D. at 383.   Thus, Defendant misses the mark in arguing that plaintiffs' claims lack merit – that is what will be decided at trial. *IPO*, 471 F.3d at 27.

**The Deceptive Sales Pitch**:   Class certification is proper where proof is offered "that the misrepresentations were made pursuant to a written, standardized sales script and that the sales agents participated in a common training program that emphasized uniformity in sales techniques." *Moore*, 306 F.3d at 1253.   As detailed above, to establish that uniform representations and omissions were made, Plaintiffs have offered proof – and will submit additional evidence once discovery into the merits begins – from which a jury can conclude that:

a common script was utilized to train Defendant's salespeople;

the salespeople had to memorize the script verbatim or they were fired;

the salespeople attended weekly training to reinforce the scripted presentation and stress the necessity of following the script for every pitch;

the salespeople were instructed that every sales pitch should contain the same core concepts; and

such extensive training was undertaken to ensure "the core components wouldn't change."

*See* Pltfs' Mem. at 20-21; Janecek Decl., ¶¶24-33; pp. 8-10 above.

Defendant's assertion that establishing liability will require an evaluation of each class member's sophistication and experience, is, in a word, wrong.   The question is whether the sales pitch "is misleading to the average consumer, ***not whether it can later be explained to the more***

- 12 -

***knowledgeable, inquisitive consumer***." *Barry v. Arrow Pontiac, Inc.*, 494 A.2d 804, 810 (N.J. 1985) (emphasis added). Consumer's sophistication is irrelevant because liability under the NCFA is predicated on a reasonable person standard, and reliance is not an element. *See Turf Lawnmower Repair v. Bergen Record Corp.*, 655 A.2d 417, 429 (N.J. 1995); New Jersey Statute §56:8-2.

Its contention that salespeople only had access to the sales script during their initial training is likewise false. The salespeople did not return the reference materials – including the sales script – when training was completed. Pltfs' Exs. 63-66 (*See* Decls. of Long, Saunders, Pisa and Rossmiller). Even assuming *arguendo* this were true, the sales script was ***memorized as a condition of employment***, and, once the initial training was over the salespeople repeatedly delivered the scripted pitch to prospective customers, two to three times a day, day in and day out. *Id*. Moreover, the salespeople attended weekly training to ensure they not deviate from the scripted presentation in the field, because "it was always core for a selling organization to rehash the steps of the sales." Quinlan Tr. 107:9-12. In short, Defendant's claim that the moment training was over its salespeople immediately and mysteriously forgot the script, is at best not credible – in fact it is incredible.

Similarly, Defendant's assertion that its salespeople "customize" the pitch based on the given client falls flat. The fact that plumbers are asked what their average plumbing job is worth but roofers are asked what their average roofing job is worth does not detract from the consistency of the representations and omissions alleged. Moreover, to the extent Defendant suggests that the words used with every class member must be identical, it is mistaken. What is required is that  the representations and omissions not substantively differ. *Shankroff v. Advest, Inc.*, 112 F.R.D. 190, 193 (S.D.N.Y. 1986). And, as the Second Circuit explains, "material uniformity in the misrepresentations may be established without the use of standardized sales scripts." *Moore*, 306 F.3d at 1255.

Here, the evidence submitted establishes that Plaintiffs' claims and circumstances are sufficiently similar to those of the absent class members.[12]  Plaintiffs have satisfied their burden of producing evidence from which the jury is likely to conclude that the sales pitches were made pursuant to a written, standardized sales script and that the sales agents participated in a common training program emphasizing the uniformity in sales techniques.  To borrow from the Court's words in *Amaranth*:

> The Proposed Representatives and the absent class members transacted [for] the same contracts, [based upon a scripted sales pitch], were allegedly negatively impacted by the same common course of manipulative conduct for which the same group of defendants is alleged to be legally responsible for the damages.  In addition, as discussed [above], all class members will make the similar legal arguments regarding the elements of each claim.

269 F.R.D. at 379.[13]

**Ascertainable Loss**:  An "ascertainable loss" under the NJCFA is one that is "quantifiable or measurable."  *Smith v. Trusted Universal Standards in Elec. Transactions, Inc.*, No. 09-5567 (RBK/KMW), 2011 U.S. Dist. LEXIS 26757, at *41 (D.N.J. Mar. 15, 2011).  Plaintiffs submitted the expert report of an economist setting forth three available damage models that can be utilized to calculate damages on a class-wide basis.  Pltfs' Ex. 46 at 11 (Macpherson Report).  Dr. Macpherson's opinions are unchallenged.  *See generally* Def's Mem.  Thus, Plaintiffs have satisfied their burden of producing evidence from which the jury is likely to conclude that Plaintiffs and class members suffered an ascertainable loss.

---

[12]    Defendant's assertion that there is a correct way and an incorrect way to use the 74% statistic, and the incorrect way was only included in one script and that script was never used (Def's Mem. at 14-16), is contrary to the evidence.  *See* Pearlman Decl., ¶¶4-22.

[13]    Defendant submits, but does not cite as support or otherwise reference the Expert Report of Kenneth Wise (Def's Ex. 52), presumably for the reasons stated in Plaintiffs' accompanying *Daubert* Motion.

- 14 -

**B.      The NJCFA Equitable Relief Claim is Susceptible to Class-Wide Evidence and Methods of Proof**

To prevail on the NJCFA claim for declaratory and injunctive relief, Plaintiffs must demonstrate that it is Defendant's practice not to provide or show the T&C to the customer until after assenting to the order, and that Defendant asserts a binding contract exists upon receiving such assent.  Defendant's corporate designee ***admits*** its sales force did not provide (or even discuss) them until after the customer has signed the "insertion order," or recorded their oral assent to purchase over the phone.  Quinlan Tr. 249:21-250:1, 260:1-10; Pearlman Decl., ¶42.  Indeed, the evidence produced to date (additional evidence will be secured once merits discovery commences) shows that Defendant trained its salespeople not to provide them the T&C until after the customer signs or verbally assents with telephone sales.  Pltfs' Mem. at 10-11; *see also* Pltfs' Exs. 63-66 (declarations from former salespeople refuting Defendant's contentions).

Defendant's corporate designee ***also admits*** that Defendant maintains that "a deal is completed upon a customer signing a contract, under an insertion order, be it a paper or electronic copy determined on when the electronic copy was – the E-signature was deployed as well as for telephone; it was based off of a voice verification process."  Quinlan Tr. 241:7-21.[14]  Via footnote, Defendant argues that providing the T&C after the contract is purportedly entered is accepted as "an

---

[14]      Defendant offers the self serving declaration from a current employee that its policy is to permit dissatisfied customers to cancel because "'there is greater harm in forcing a customer to abide by the terms of their contract against their wishes that in permitting them to terminate early and possibly earn their business back in the future.'"  Def's Mem. at n.38 (quoting Eastburn Decl., ¶4).  This self-serving statement is not supported by the evidence.  Class members who disagree with the T&C and/or realize they are not receiving the services they were promised are unable to cancel the contract.  Pltfs' Ex. 21.  When the Defendant is unable to deflect a class member's complaint and he/she stops paying, he/she is subjected to an aggressive collections process to enforce payment.  *See, e.g.*, Pltfs' Ex. 68 at 60:7-17; Pltfs' Ex. 44 (e-mail from Yellowpages.com collections); Pltfs' Ex. 45 (collections letter); *see also* Pearlman Decl., ¶43 & Pltfs' Ex. 62.

- 15 -

efficient fixture of modern commercial transactions."  Def's Mem. at 20 n.39.  However, this assertion is contrary to the law.  Consumers are not bound to terms and conditions when they "respond[] to an offer that did not carry an immediately visible notice of the existence of license terms or require unambiguous manifestation of assent to those terms."  *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 31 (2d Cir. 2002) (finding plaintiffs not bound to license agreement terms where there was no notice); *see also Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362, 367 (E.D.N.Y. 2009) (plaintiff not bound to terms and conditions when she lacked actual and constructive notice of the terms and conditions because the terms and conditions were not prominently displayed or prompted for review) *aff'd*, 380 Fed. Appx. 22 (2d Cir. 2010).[15]

### C.    The Breach of Contract Claim is Susceptible to Class-Wide Evidence and Methods of Proof

To prevail on the contract claims for the guaranteed clicks product, Plaintiffs will have to demonstrate either that the clicks were not search engine clicks, but were ad content network clicks, or that the clicks received were not "local," "targeted" or "qualified."  The evidence submitted will permit the jury to find both breaches occurred.

**Search Engine Clicks**:  The class members contracted to receive an agreed number of clicks from customers actively looking for goods or services using search engines ("Search Engine Clicks").  Kent Rpt. at 23, Ex. 18.  Search Engine Clicks are valuable.  Kent Rpt. at 41.  But, as Plaintiffs' expert opines, many (if not most) of the clicks Defendant delivers come from "ad content networks"

---

[15]    Defendants cases are inapposite.  *See In re Samsung Elec. Am., Inc. Blue-Ray Class Action Litig.*, No. 08-0663 (JAG), 2008 WL 5451024, at *3-*4 (D.N.J. Dec. 31, 2008) (forum selection clause was clearly visible on product packaging at time of purchase); *Kowalski v. Yellowpages.com, LLC.*, No. 09-2382(PGS), 2010 WL 3323749, at *3 (D.N.J. Aug. 18, 2010) (the court found that plaintiffs did not demonstrate the forum selection clause itself – as opposed to the entire contract – was procured by fraud).

("Ad Content Clicks") – where people are ***not actively looking for a good or service***, but instead are reading an internet article upon which the pay-per-click ad is placed – which are much less likely to convert to sales.  *Id.* at 41-42.  Defendant responds by claiming that Plaintiffs submitted no evidence of any representation that Search Engine Clicks would be provided, or that any clicks originated from the ad content network.  Def's Mem. at 13.  Defendant is wrong on both counts.

As an initial matter, Defendant ignores that the focus of this claim is ***Defendant's failure to disclose*** that a majority of the clicks would be Ad Content Clicks.  Thus, it is Defendant who has failed to submit any evidence of disclosure to defeat this material omissions claim.  Defendant further errs, in that Plaintiffs cited ample evidence that the clicks were to come from search engine networks.  They submitted evidence that Defendant's salespeople were trained to stress that clicks will come from internet search engines.  Quinlan Tr. 145:23-146:10.  The sales script states:

> YELLOWPAGES.COM also promotes your website on an ***expansive network of search engines*** where we offer a guaranteed number of clicks annually to your website . . . .  When people are ***searching for your products or services on search engines*** we are going to market your website to offer ***local targeted, qualified traffic to your website***.

Pltfs' Ex. 8; *see also* Pltfs' Exs. 9, 10.  And, the written sales material, which Defendant does not dispute was provided to the class members, indicates that the clicks will come from people actively looking for goods or services using search engines:

> Yellowpages.com has Developed a One-Stop-Shop for all your ***Search Engine*** Solutions.  Let us do the work for you, and see how easy it is to ***drive traffic to your website***.  One-Stop-Shop For ***Search Engine*** Solutions, ***Locally targeted, qualified traffic to your Web site*** . . . .  Guaranteed number of total click-thrus by contract end-date.

Pltfs' Ex. 15 (YPclicks! sales material).

Finally, the evidence that currently exists (more will be adduced in merits discovery) demonstrates that ad content clicks are received, even if at this early stage the exact percentages are

unknown.  Kent Rpt. at 41-42.  Moreover, Defendant's objection to the expert's opinion that a majority of the clicks appear to come from the ad content network, is premature.  As explained in *Amaranth*, at class certification the court's role is not to determine if the fact ***will*** be proven on a class-wide basis, it is to determine if there is a "***workable methodology***" for doing so.  *Amaranth*, 269 F.R.D. at 383.  The Court explained:

> Plaintiffs, however, are not required to successfully employ their proposed methods at the class certification stage.  [The expert]'s methods will undoubtedly need refinement before they are effectively applied at trial.  Regardless, at this stage of the litigation, the proposed methods are sufficiently developed to permit the conclusion that they can be used to demonstrate liability on a class-wide basis.

*Id*. at 385.

**Local, Targeted and Qualified Clicks**:  As to Defendant's capability to deliver local and targeted clicks, the evidence submitted shows that as a matter of policy and procedure it does not use a given mileage from the class members' business, or even the city in which the business is located, to provide "local and targeted" clicks.  Pltfs' Mem. at 9.  It further shows that while Google – the industry leader – recommends targeting a 20-mile radius (Kent Rpt. at 18), Defendant uses the New York DMA as the purportedly relevant market.[16] (Pltfs' Ex. 40).  Defendant does not dispute that the New York DMA "***represents about 6.5% of the U.S. population and is somewhere around 5 times the size of a circle with a 20-mile circumference***."  Kent Rpt. at 18.  Defendant also does not dispute that it failed to disclose to plaintiffs (and the Class) that the clicks they were purchasing would come from the New York DMA.  Accordingly, Plaintiffs have submitted a workable method

---

[16]     The assertion that Plaintiffs' expert testified that DMAs are appropriate for some advertisers is consistent with its demonstrated propensity to overstate the facts.  Mr. Kent testified that while use of a DMA might be appropriate for some businesses generally, it was not appropriate for the overwhelming number of small businesses that are the class members here.  Pltfs' Ex. 73 at 76:3-19 (Kent Deposition Transcript).

- 18 -

of proof.  *See also* Pltfs' Exs. 63, 65, 66 (declarations from former salespeople and Director of Operations that the geo-targeting did not work).

### D.   "Superiority" is Established by a Preponderance of the Evidence

**Dearth of Individual Suits**:  Defendant argues superiority is not satisfied because five of the more than *11,700* class members – equating to just 0.04% – have filed individual actions.  Def's Mem. at 33.  According to Defendant, this suggests that the unnamed class members have an interest in controlling their own litigation.  *Id*.  In reality, it establishes the exact opposite, as 99.96% of the class members have not filed individual actions. *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 133 (S.D.N.Y. 2001) (superiority met and certification granted where "relatively few" of the putative class members indicated desire to litigate their claims outside of the class action); *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 443 (E.D. Pa. 2008) (superiority found when 23 individual suits pending).  The fact that five class members filed individual suits in no way diminishes the interests of the more than *11,700 remaining class members* to pool their resources to pay the high cost of discovery and experts that will be necessary to prove their claims.  *See, e.g.*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); *see also Deposit Guar. Nat'l Bank*, 445 U.S. at 339.

Moreover, the five lawsuits Defendant identified provide further evidence that certification will promote "'the efficiency and economy of litigation which is a principal purpose of the [class action] procedure.'"  *General Tel. Co. of the Sw.*, 457 U.S. 147, 159 (1982); *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 186 (S.D.N.Y. 2008).  Certification of the proposed class offers judicial efficiencies because without class certification, tens of thousands of individual class members would be forced to file individual suits to obtain relief for Defendant's deceptive practices.  *See also Board of Trs. of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 269 F.R.D. 340, 355 (S.D.N.Y. 2010).

**Class Action Waiver**:  The class action waiver upon which Defendant purportedly relies is legally infirm for two reasons.  First, the New Jersey Supreme Court has spoken on this issue.  As a matter of public policy, class action waivers in contracts of adhesion generally are not enforceable, particularly in consumer cases.  *Lee*, 4 A.3d at 577.  As such:

> The public interest at stake in her ability and the ability of her fellow consumers effectively to pursue their statutory rights under [New Jersey's] consumer protection laws overrides the defendants' right to seek enforcement of the class-arbitration bar in their agreement.

*Muhammad v. County Bank of Rehoboth Beach, Del.*, 912 A.2d 88, 101 (N.J. 2006); *see also In re Am. Express Merchants' Litig.*, 554 F.3d 300 (2d Cir. 2009).  Second, Defendant ignores that the purported class action waiver – like the rest of the contract terms – was provided after the contract was purportedly entered into and, thus, violates the NJCFA and is unenforceable for that reason as well.  *Specht*, 306 F.3d at 31 (holding plaintiffs not bound to hidden terms because they "were responding to an offer that did not carry an immediately visible notice of the existence of license terms or require unambiguous manifestation of assent to those terms").

**Manageability**:  Defendant's arguments concerning the manageability factor (Rule 23(b)(3)(D)) focus entirely on its misguided assertion that individual issues predominate because the sales pitches given were not based upon a the Sales Script.  Def's Mem. at 35.  As explained above, Defendant is wrong.  Moreover, "[d]enying class certification on manageability grounds is 'disfavored' and 'should be the exception rather than the rule.'"  *Willix v. Healthfirst, Inc.*, No. 07-CV-1143 (ENV)(RER), 2009 U.S. Dist. LEXIS 114818, at *13 (E.D.N.Y. Dec. 4, 2009).  At bottom, a preponderance of the evidence satisfies the "superiority" requirement of Rule 23(b)(3).

DATED:  April 8, 2011                              Respectfully submitted,


                                                  s/FRANK J. JANECEK, JR.
                                                  FRANK J. JANECEK, JR.

- 20 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
FRANK J. JANECEK, JR.
CHRISTOPHER COLLINS
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

LYNCH LYNCH HELD ROSENBERG
  & PERKINS, P.C.
PAUL I. PERKINS
45 Eisenhower Drive, Suite 300
Paramus, NJ  07652
Telephone:  800/656-9529
888/271-9726 (fax)

COHN LIFLAND PEARLMAN
  HERRMANN & KNOPF LLP
PETER S. PEARLMAN
Park 80 Plaza West-One
Saddle Brook, NJ  07663
Telephone:  201/845-9600
201/845-9423 (fax)

Attorneys for Plaintiffs

- 21 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 19, 2011, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 19, 2011.

s/ FRANK J. JANECEK, JR.
FRANK J. JANECEK, JR.

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  FrankJ@rgrdlaw.com

# Mailing Information for a Case 1:10-cv-07318-PGG

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **James F. Bogan , III**
  jbogan@kilpatrickstockton.com,dleavell@kilpatrickstockton.com

- **Christopher Collins**
  chrisc@rgrdlaw.com

- **Curtis Allen Garrett , Jr**
  agarrett@kilpatricktownsend.com

- **John R. Gibson**
  jogibson@kilpatricktownsend.com

- **Ian Michael Goldrich**
  IGoldrich@kilpatrickstockton.com,AGarcia@kilpatrickstockton.com,EPulsipher@kilpatrickstockton.com

- **Frank J. Janecek , Jr**
  frankj@rgrdlaw.com,MBacci@rgrdlaw.com,JWolsborn@rgrdlaw.com

- **Peter S. Pearlman**
  psp@njlawfirm.com

- **Christopher S. Polaszek**
  cpolaszek@milberg.com,dleifer@milberg.com,asokolowski@milberg.com

- **Ronald Lee Raider**
  rraider@kilpatrickstockton.com

- **Roland Winfield Riggs , IV**
  rriggs@milberg.com

- **Peter George Safirstein**
  psafirstein@milberg.com,MAOffice@milberg.com

- **Daniel G. Schulof**
  dschulof@kilpatricktownsend.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Paul I. Perkins
LYNCH LAW FIRM, P.C.
45 EISENHOWER DRIVE
Third Floor
PARAMUS, NJ 07652
```

**Andrew Sokolowski**
Milberg LLP
300 South Grand Avenue, Suite 3900
Los Angeles, CA 90071

**Jason Thompson**
Sommers Schwartz PC
2000 Town Center Suite 900
Southfield, MI 48075