**ATTACHMENT**

**------------------------**

**DEFENDANT YELLOWPAGES.COM'S
SURREPLY TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AL KOWALSKI d/b/a KOWALSKI PLUMBING, MICHELLE WINICK d/b/a MICHELLE WINICK DESIGN, and MICHAEL GIDRO, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>v.<br><br>YELLOWPAGES.COM, LLC,<br><br>          Defendant. | Civil Action No. 10-7318 (PGG)<br><br>CLASS ACTION<br><br>DEFENDANT YELLOWPAGES.COM'S SURREPLY TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION |

## DEFENDANT YELLOWPAGES.COM'S SURREPLY TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

KILPATRICK TOWNSEND & STOCKTON LLP

JAMES F. BOGAN III (admitted *pro hac vice*)
C. ALLEN GARRETT JR. (admitted *pro hac vice*)
RONALD L. RAIDER (admitted *pro hac vice*)
JOHN R. GIBSON (admitted *pro hac vice*)
DANIEL G. SCHULOF (admitted *pro hac vice*)
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4528
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555

IAN M. GOLDRICH (NY State Bar No. 501475)
31 West 52nd Street, 14th Floor
New York, New York 10019
Telephone:  (212) 775-8700
Facsimile:  (212) 775-8800

# TABLE OF CONTENTS

Page

I.      OF PLAINTIFFS' EVIDENCE AND ARGUMENTS ........................................................1

II.     ARGUMENT AND CITATIONS OF AUTHORITY ........................................................3

      A.      Plaintiffs' New Evidence Does Not Show Uniform Dissemination
            the Alleged Misleading Representations and Omissions .........................................3

           1.      Plaintiffs' New Evidence Still Does Not Establish
                 Classwide Exposure to Any Alleged Incorrect Usage of the
                 "74% Statistic" ..........................................................................................3

           2.      Plaintiffs' Reply Does Not Establish Class Exposure to the
                 Alleged Misrepresentation Regarding "Overinflated
                 Conversion Statistics," which Applies Exclusively to the
                 YPClicks! Product ....................................................................................6

           3.      Only Mr. Gidro Purchased the YPClicks! Product, and His
                 Complaint About the Product Had Nothing to Do With
                 Whether He Received "Local, Targeted, and Qualified"
                 Clicks .........................................................................................................8

           4.      The "Search Engine Clicks" Claim Is Not Appropriate for
                 Class Certification ...................................................................................10

      B.      Plaintiffs Lack Standing To Pursue Claims On Behalf of Absent
            Class Members That Have Not Suffered the Same Alleged Injuries ....................11

      C.      Plaintiffs' Have Waived Any Claim for Declaratory or Injunctive
            Relief, Which is Meritless in Any Event ............................................................14

      D.      Plaintiffs' Breach of Contract Claim Is Not Suitable for
            Certification ........................................................................................................15

III.    CONCLUSION..........................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

Page

**Cases**

*Cox v. Sears Roebuck & Co.*,
   138 N.J. 2, 647 A.2d 454 (1994) ................................................................................... 13

*Czmyr v. Avalanche Heating and Air Conditioning, Inc.*,
   2011 WL 519871 (N.J. Super Ct. App. Div. Feb. 16, 2011) .................................... 13

*Dillon v. U-A Columbia Cablevesion of Westchester, Inc.*,
   100 N.Y.2d 525, 790 N.E.2d 1155 (2003)................................................................ 14

*Dixon v. Miller*,
   293 F.3d 74 (2d Cir. 2002) ...................................................................................... 14

*EDP Medical Computer Sys., Inc. v. United States*,
   480 F.3d 621 ............................................................................................................ 14

*Fishbury, Ltd. v. Connetics Corp.*,
   No. 06 Civ. 11496, 2006 WL 3711566 (S.D.N.Y. Dec. 14, 2006).......................... 12

*Hevesi v. Citigroup, Inc.*,
   366 F.3d 70 (2d Cir. 2004) ...................................................................................... 12

*Hines v. Overstock.com, Inc.*,
   668 F. Supp. 2d 362 (E.D.N.Y. 2009) .................................................................... 14

*In re Alstom SA Sec. Litig.*,
   253 F.R.D. 266 (S.D.N.Y. 2008) ............................................................................ 12

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   245 F.R.D. 147 (S.D.N.Y.) ..................................................................................... 12

*In re Samsung Elecs. Am. Blu-Ray Class Action Litig.*,
   No. 08-0663, 2008 WL 5451024 (D.N.J. Dec. 31, 2008)........................................ 15

*Kaplan v. Wholesale Auto. Supply Co.*,
   2009 WL 1347404 (N.J. Super. Ct. App. Div. Mar. 15, 2009) ............................... 13

*Lewis v. Casey*,
   518 U.S. 343 (1996).................................................................................................. 12

*NLRB v. Star Color Plate Serv.*,
   843 F.2d 1507 (2d Cir. 1988) .................................................................................. 14

## TABLE OF AUTHORITIES
### continued

Page

*Specht v. Netscape Commc'ns Corp.*,
  306 F.3d 17 (2d Cir. 2002) ....................................................................................... 14

**Other Authorities**
Rule 23(b)(2)...................................................................................................... 3, 14, 15

US2008 2528994.6

In their Reply in Support of the Motion for Class Certification ("Plaintiffs' Reply"), Plaintiffs include three declarations from previously-undisclosed former employees of YellowPages.com, introduce several documents that were not submitted along with Plaintiffs' Motion for Class Certification ("Plaintiffs' Motion"), and advance new arguments in support of previously-abandoned claims for declaratory and injunctive relief and regarding their breach of contract claim.  Even if Plaintiffs' new evidence and arguments are considered, Plaintiffs still have failed to show that any of the named Plaintiffs were the recipients of YellowPages.com's alleged "misleading representations and omissions," much less that uniform misrepresentations were made to all members of the putative class.  Accordingly, Plaintiffs' request for class certification should be denied.

## I.    SUMMARY OF PLAINTIFFS' EVIDENCE AND ARGUMENTS

Plaintiffs' assertion that uniform oral misrepresentations were made to members of the putative class – and that class certification is therefore appropriate – is premised on the assumption that a "scripted sales presentation" was utilized by every single sales representative during their meetings with every member of the putative class, and that the "scripted pitch" did not materially vary from one class member to the next.  Assuming all of this, Plaintiffs argue that the "scripted sales pitch" contains at least three alleged "misleading representations and omissions":  "(1) it overstates the 'conversion' statistics; (2) it overstates the class members' expected return on investment; and (3) it misrepresents that the clicks received will be local, targeted and qualified."  Plfs.' Mot., at 7.[1]

---

[1]  Although not referenced in this initial list, Plaintiffs also allege that YellowPages.com misled members of the putative class into believing that that "clicks" delivered through the YPClicks! product would only come from "people who are actively looking for goods or services using search engines," but in fact delivered clicks from "ad content networks," which Plaintiffs contend "are much less likely to convert to sales."  Plfs.' Mot., at 10.

Plaintiffs fail to show, however, that the alleged "script" was used with the named Plaintiffs or with any other members of the putative class.[2]  This critical deficiency is not cured by their new reply evidence and arguments.  Instead, Plaintiffs dismiss the substantial evidence submitted by YellowPages.com showing that sales "scripts" were not used and were not required to be used by sales representatives, arguing that such evidence goes to the merits and not class certification.  This argument misses the point.  Plaintiffs' assertion that class certification is appropriate is based entirely on their claim that a "common script" containing the alleged misrepresentations was uniformly used with all members of the putative class.  Plaintiffs cannot make this showing here because the substantial evidence demonstrates that YellowPages.com sales representatives did not use uniform "scripted sales presentations" but instead created individualized presentations and participated in meetings that were unique to each potential customer.  Accordingly, the issue of whether any particular representation was or was not made would have to be assessed on a customer-by-customer basis.

Plaintiffs offer new declarations from three previously-undisclosed former employees: Mike Pisa, Jim Rossmiller, and Noel Saunders.[3]  None of these declarants, however, dealt with the named Plaintiffs or any members of the putative class.  Thus, their testimony establishes nothing relative to the sales experiences of Plaintiffs or other New Jersey advertisers.

Plaintiffs also rely on documents produced during discovery but never used in any deposition nor presented with Plaintiffs' Motion.  Had Plaintiffs questioned YellowPages.com's

---

[2]  Plaintiffs ignore the recorded sales presentation made to Mr. Kowalski, which is set out in his deposition transcript.  It is undisputed that such presentation did not follow the alleged "script" and that none of the alleged misrepresentations were made to Mr. Kowalski.

[3]  Plaintiffs also included a second declaration from Robert Long, a former sales representative, who previously submitted a declaration in opposition to YellowPages.com's motion to transfer venue of this case.  YellowPages.com obviously did not have the opportunity to respond to Mr. Long's second declaration at the time it filed its opposition to Plaintiffs' Motion.

corporate representatives about these documents, they would have learned that none of these documents were (a) approved for use in the field, or (b) used to train sales personnel who dealt with Plaintiffs or any other member of the putative class.

Finally, Plaintiffs attempt to resurrect arguments waived in Plaintiffs' Motion. As YellowPages.com noted in its opposition brief, Plaintiffs failed to address and therefore waived (a) any claim for certification of an injunctive or declaratory relief class under Rule 23(b)(2) (they devoted a single, conclusory sentence to Rule 23(b)(2) in their opening brief), and (b) any claim for certification of Plaintiffs' alternative "breach of contract" claim (Plaintiffs' Motion did not identify *any* contractual provision allegedly breached by YellowPages.com). In response (and without attempting to explain their prior waiver), Plaintiffs devote several pages of their Reply to these issues. *See* Plf.s' Reply, at 15-19. Even assuming these belated arguments are considered by the Court, however, Plaintiffs have not shown that certification is proper on either their Rule 23(b)(2) request or their breach of contract claim.

Accordingly, even assuming Plaintiffs' new testimony, evidence, and arguments are considered by the Court, Plaintiffs' Motion for Class Certification should be denied.

## II.    ARGUMENT AND CITATIONS OF AUTHORITY

### A.    Plaintiffs' New Evidence Does Not Show Uniform Dissemination the Alleged Misleading Representations and Omissions

#### 1.    Plaintiffs' New Evidence Still Does Not Establish Classwide Exposure to Any Alleged Incorrect Usage of the "74% Statistic"

Plaintiffs acknowledge they must show that a uniform misrepresentation was made to *all* members of the putative class. Plaintiffs' remarkable inconsistency on the "74% statistic" issue – even as between their opening brief and reply – confirms that no such common proof exists.

Plaintiffs' initial brief did not explain their "74% statistic" fraud theory with any clarity. Plaintiffs appeared to argue that, while the "pitch" portion of the alleged "scripted presentation"

presented the 74% statistic *correctly* (by referring to the number of "online users" who contacted a YellowPages.com advertiser, *see* Plfs.' Mot., at 5 & Janacek Decl. ¶ 29), the "ROI spreadsheet" – which only was utilized if a class member "hesitates, questions the cost or declines" (Plfs.' Mot., at 6 & Janacek Decl. ¶ 32) – presented the 74% statistic *incorrectly* (by referring to the number of "searches" that led to a contact with a YellowPages.com advertiser, *see* Plfs.' Ex. 29). Thus, under Plaintiffs' original theory, conflicting representations were only made to a putative class member who "hesitated" about purchasing a product.

In response, YellowPages.com established that (1) none of the named Plaintiffs were exposed to this alleged misrepresentation (Def.'s Opp. at 5-10, 14-16 & n. 25); (2) the only document identified as incorrectly stating the 74% statistic (Plfs.' Ex. 29) was never made available for use by YellowPages.com's sales representatives (Def.'s Opp., at 15 & n. 23); and (3) Plaintiffs did not show that an ROI analysis was conducted with every customer, much less that the 74% statistic was incorrectly cited in every such presentation (Def.'s Opp., at 16).

Plaintiffs' only direct response to this showing is a footnote asserting that YellowPages.com's argument is "contrary to the evidence." Plfs.' Reply, at 14 n.12 (citing Pearlman Decl. ¶¶ 4-22). The Pearlman Declaration, however, contradicts the previously-submitted Janacek Declaration in a number of material respects.[4] Furthermore, the new evidence

---

[4] Mr. Pearlman, for example, suggests that the alleged "script" contains the "74% statistic." Pearlman Decl. ¶ 5. He does not cite any "script" for this assertion, and his colleague, Mr. Janacek, made no mention of the 74% statistic in his detailed description of the alleged "script." *See* Janacek Decl. ¶ 29; *see also* Compl. ¶ 25 (setting forth the alleged "Scripted Presentation," which does not reference the 74% statistic). Further, Mr. Pearlman and Mr. Janacek point to different documents as evidence of the alleged misuse of the 74% statistic. Mr. Janacek cited Plaintiffs' Exhibits 2, 3, 4, 5, 6, 24, 27, 29. Mr. Pearlman ignores Exhibits 2, 3, 4, 5, 6, 24, 27, and 30 and instead cites to (a) Exhibits 29, 31, 56, 57, 59; (b) the Declaration of Robert Long; and (c) testimony from previously-undisclosed witnesses Michael Pisa, Jim Rossmiller, and Noel Saunders. Pearlman Decl. ¶¶ 11, 21. The omissions are not an oversight. YellowPages.com has shown that each of the documents omitted from Mr. Pearlman's list *correctly* described the "74%

cited by Mr. Pearlman does not demonstrate that the 74% statistic was incorrectly presented to the putative class.

Mr. Pearlman cites the Declarations of Robert Long, Noel Saunders, Jim Rossmiller, and Mike Pisa as proving that "Yellowpages.com salespeople always stated that 74% of the *searches* shown in the Category By Directory Report resulted in a contact to an advertiser."  Pearlman Decl. ¶ 7 (citing Plfs.' Exs. 63-66) (emphasis in original).  Mr. Pisa's Declaration (Plfs.' Ex. 64), however, does not address the 74% statistic.  Mr. Rossmiller simply states:  "In substantially all of the presentations" that he conducted in Pittsburgh, Pennsylvania, he "told people that 74% of the searches on the report resulted in a contact."  Rossmiller Decl. ¶ 14.  Moreover, none of these witnesses testified they met any New Jersey advertisers.[5]  Accordingly, their declarations should not be accorded any weight when determining whether members of the putative class (New Jersey advertisers) were subject to uniform "misleading representations and omissions."

The "new" documents cited by Mr. Pearlman (Pearlman Decl. ¶¶11(a)-(d), 21(a)-(d)) likewise do not establish systematic misuse of the 74% statistic:

- Exhibit 56:  Mr. Pearlman cites Exhibit 56 as "one of Defendant's own advertisements … in which the Morpace statistics are applied to the number of searches per month."  Pearlman Decl. ¶ 11(a); *see also id.* ¶ 21(a).  YellowPages.com designated Mary Jane Thornburg to testify about the Morpace relationship and to explain how the Morpace statistics were used by YellowPages.com.  Her testimony as a corporate representative, and as furthered clarified in her attached declaration, states that sales collateral proposing to use the Morpace statistics in an ROI calculation was not approved for use by Morpace and therefore never was approved for use by sales representatives.  Declaration of Mary

---

statistic."  *See* Def.'s Opp., at 15 (citing Plfs.' Exs. 2-6 and 30 ("Over 74% of online users who visit YELLOWPAGES.COM contact a merchant.")).

[5]  *See id.* ¶ 2 ("I sold Yellowpages.com advertising as a premises sales representative in the area of Pittsburgh, Pennsylvania."); Long Decl. ¶ 3 ("I sold Yellowpages.com advertising in the area of Long Island, New York."); Pisa Decl. ¶ 2 ("I sold Yellowpages.com advertising as a premises sales representative in the area of Richmond, VA."); and Saunders Decl. ¶¶ 1, 6 (stating that he worked at the "headquarters of Yellowpages.com" throughout his tenure [located in Glendale, California], but would go "on 'ride alongs' with Salespeople in the field").

Jane Thornburg ("Thornburg Decl.") ¶¶ 7-8 (attached hereto as Exhibit 55[6]); Thornburg Dep. at 112:18-119:21.  Ms. Thornburg is not aware of Exhibit 56 ever being released to the public (and no evidence has been submitted to the contrary).  Thornburg Decl. ¶ 7.

- Exhibit 31:  Mr. Pearlman describes Exhibit 31 as "one of Defendant's sales training documents."  Patrick Quinlan, the YellowPages.com corporate designee on training issues, testified, however, that Exhibit 31 is "not an 'out-of-region' training document" (New Jersey is within the "out-of-region" territory) and, therefore, "it is not a document that would have been used with YellowPages.com sales trainees."  Declaration of Patrick Quinlan ("Quinlan Decl.") ¶ 11 (attached hereto as Exhibit 56); *see also id.* ¶ 7.  Moreover, the Category By Directory Reports that are actually used with potential advertisers, which Exhibit 31 is based upon, do not include an ROI calculation or any reference to an ROI calculation.  *See* Plfs.' Exs. 32-33; Quinlan Decl. ¶¶ 14-16.

- Exhibit 57:  Mr. Quinlan "confirmed that [Exhibit 57], too, is an in-region training document that would not have been used [with] YellowPages.com sales trainees."  Quinlan Decl. ¶ 18.  Mr. Quinlan also "confirmed that this document was not created until May 2009, and therefore could not have been used in any training prior to that time."  *Id.*  Moreover, Plaintiffs have not presented any evidence establishing that ***any*** trainees, in-region or otherwise, reviewed this particular training slide.  *Id.* ¶ 18 ("I do not know, however, whether this particular version of this particular training deck was ever actually used in 'in-region' initial sales training.").

- Exhibit 29:  YellowPages.com showed in its Opposition brief, and Ms. Thornburg confirms in the attached declaration, that this document, like Exhibit 56, "was never approved by Morpace" and thus was "not provided to sales representatives for use in the field."  Thornburg Decl. ¶ 9; *see also* Def.'s Opp. at 15 & n. 23.

Thus, like the other evidence Plaintiffs initially cited as allegedly misdescribing the 74% statistic (which is mostly ignored by Plaintiffs in their Reply, given YellowPages.com's showing of its irrelevance in its opposition brief), none of the "new documents" supports a finding the 74% statistic was disseminated to members of the putative class.

      **2.**      **Plaintiffs' Reply Does Not Establish Class Exposure to the Alleged Misrepresentation Regarding "Overinflated Conversion Statistics," which Applies Exclusively to the YPClicks! Product**

Regarding the "overinflated conversion statistics," Plaintiffs do not and cannot dispute

YellowPages.com's showing that this purported misrepresentation pertains only to the YPClicks!

---

[6] The Bogan Declaration filed in support of YellowPages.com's Opposition to Plaintiffs' Motion for Class Certification contained Exhibits 1-54.  For purposes of continuity, the exhibits referenced herein continue that numbering scheme.

product, which only Mr. Gidro (and not Ms. Winick or Mr. Kowalski) purchased.  *See* Def.'s

Opp. at 4 (citing Bogan Decl. ¶¶ 20, 29(a)) & n. 6 (citing Macpherson Report, at 7-10) (outlining

damages models for alleged "overstated conversion statistics" misrepresentation solely in

relation to the YPClicks! product).  Moreover, Plaintiffs' Reply makes no effort to refute

YellowPages.com's showing that none of the named Plaintiffs were injured by this alleged

misrepresentation.  *See* Def.'s Opp. at 6 (Kowalski), 7 (Winick), and 8-9 (Gidro).

      YellowPages.com also presented extensive testimony from current YellowPages.com

employees confirming they never asked an advertiser how many customers "out of 10" would

contact the advertiser after viewing the advertiser's website.  *See id.* at 11 (citing Bogan Decl. ¶

50).  Plaintiffs offer a footnote response to this extensive evidence, dismissing these employees'

testimony as "self-serving" and as contradicted by Mr. Quinlan's testimony about the "out of 10"

question.  *See* Plfs.' Reply, at 10 n. 7.  But Mr. Quinlan's testimony spoke to the "core

components that were drilled" in training, not to any "script" (and his testimony proves nothing

about whether the "out of 10" question actually was used in the field).  Quinlan Dep., at 135:22-

136:5.

      Plaintiffs present four new declarations, three of which are from witnesses never before

identified by Plaintiffs (Noel Saunders, Mike Pisa, and Jim Rossmiller), as proof that the "out of

10" question was posed to all class members.  The new declaration from the only "disclosed"

witness, Mr. Long, contradicts Plaintiffs' position as to when the "out of 10" question is used in a

sales presentation, with the result that the "conversion statistics" mentioned by Mr. Long are

much lower than the alleged "10%, 20%, [or] 30%" rates on which Plaintiffs' fraud claims are

predicated.  *Compare* Plfs.' Mot., at 7 (claiming class members were led to expect conversion

rates of "10%, 20%, 30% or greater") *with* Long Decl. ¶ 14(e) (claiming "out of 10" question was

- 7 -

asked only *after* expected contacts had been established, and providing examples in which an advertiser would have an expected conversion rate of 0.06% or 8%, depending on the product).

Noel Saunders, one of the recently-disclosed witnesses, says that "customers" were asked the "out of 10" question, but provides no support for Plaintiffs' position regarding when in a sales presentation the allegedly misleading question would have been presented (which, as explained above, has a direct impact on how a "conversion statistic" can allegedly be "inflated"). *Compare* Plfs.' Mot., at 6 *with* Saunders' Decl. ¶ 11(a). Mr. Saunders goes on to provide an "opinion" that "the actual click to conversion rate for advertisers utilizing the Guaranteed Clicks Program was probably closer to 1.8%," but he provides no evidentiary support for this specific figure. Saunders Decl. ¶ 10(a)(i).

The other two newly-disclosed witnesses, Mr. Pisa and Mr. Rossmiller, do not speak to the issue directly, and neither testifies about the use (or nonuse) of the "out of 10" question. Mr. Pisa – who was a sales representative in Richmond, Virginia, for less than fourteen months – testified that "[e]very sales presentation … was to utilize a return on investment analysis." Pisa Decl. ¶ 9. Yet, even Mr. Pisa did not claim to use a ROI analysis in "every" sales presentation; instead, he said he used it in "substantially" all presentations. *Id.* ¶ 10. Mr. Rossmiller – who worked in Pittsburgh, Pennsylvania – similarly so testified. Rossmiller Decl. ¶¶ 2 & 12.

Thus, none of Plaintiffs' new evidence establishes the "overinflated conversion statistics" uniformly were presented to members of the putative class.

          **3.**       **Only Mr. Gidro Purchased the YPClicks! Product, and His Complaint About the Product Had Nothing to Do With Whether He Received "Local, Targeted, and Qualified" Clicks**

Plaintiffs' Motion argued that "Plaintiffs and the class members received far fewer clicks than represented. And those clicks they did receive were often far from local, targeted and/or qualified." Plfs.' Mot., at 9. YellowPages.com's response established that (a) only one of the

three Plaintiffs (Mr. Gidro) even bought the YPClicks! product (to which this alleged misrepresentation pertains), and he made no complaint that his clicks were not "local, targeted, and qualified"; (b) the meaning of "local" is specific to each advertiser (a point on which Plaintiffs' expert agreed); and (c) a multi-step, individualized process is utilized to "geo-target" end users.  Def.'s Opp., at 12-13.

Plaintiffs' Reply appears to re-cast this as going only to their breach of contract claim and not to their CFA claim.  *See* Plfs.' Reply, at 16.  Re-characterizing this as a "breach of contract" does not salvage the argument, however, because Plaintiffs have identified no contractual promise to provide "local, targeted, and qualified" clicks.  Mr. Gidro's contract (Plfs.' Ex. 17) certainly contains no such representation.

Whether used as the basis for a breach of contract or a CFA claim, the "local, targeted, and qualified" clicks allegation involves individualized issues inappropriate for certification. Although Plaintiffs assert that their expert (Mr. Kent) has proposed a "workable method of proof" (Plfs.' Reply, at 18-19), Mr. Kent admitted in his deposition he had no method for determining whether *any* of the alleged misrepresentations were made to members of the putative class.[7]  With respect to "local, targeted, and qualified" clicks in particular, Mr. Kent admitted he had no "methodology" appropriate for classwide application.[8]

---

[7] *See, e.g.,* Kent Dep., at 60:25-62:25 (admitting he had not "thought about" how one might determine whether the alleged misrepresentations and omissions applied on a classwide basis).

[8] *See* Kent Dep., at 76:4-10 (testifying that he "couldn't come up with a specific number" as to "the number or percentage of the putative class for which DMA targeting would not be appropriate"); 77:1-25 (agreeing that one would need to know about the nature of the advertiser's business to determine whether DMA targeting was or was not appropriate); 79:14-80:20 (opining that "most of YellowPages' clients are businesses with a small geographic footprint," but stating that he did not "know th[e] specific number" that met that description, and his opinion was merely based on the fact that "[t]here are 15 to 20 million businesses in the United States, and most of them are the sorts of businesses that serve a small area" and "[t]hese are the sorts of businesses you find in the print YellowPages").

Determining whether the YPClicks! package "worked" for an advertiser would require an account-by-account review of the specific actions taken on behalf of that advertiser. Mr. Kent's Report admits as much: "In order to make a [pay-per-click] campaign work, one has to pick just the right keywords, target geographically correctly, write effective ad text, have an effective landing page, have a good click price, and so on." Kent Report, at 19. Thus, both parties' experts appear to be in agreement that whether an advertiser received "local, targeted, and qualified" clicks can be determined only by analyzing each advertiser's account.

Plaintiffs cite to the new declarations of Messrs. Long, Saunders, and Rossmiller as supporting the proposition that "the geo-targeting did not work." Reply, at 19 (citing Plfs.' Exs. 63, 65, & 66). This conclusory assertion establishes nothing about how the alleged failure by YellowPages.com to deliver "local, targeted, and qualified" clicks can be determined or quantified on a class-wide basis. Similarly, Mr. Rossmiller's vague reference to a "big complaint" about the quality of advertisers' clicks shows neither a uniform misstatement nor class-wide injury. Rossmiller Decl. ¶ 25(a)(iv).

Accordingly, the "local, targeted, and qualified" clicks claim is not appropriate for class-wide resolution, whether as a breach of contract claim or a CFA claim.

### 4. The "Search Engine Clicks" Claim Is Not Appropriate for Class Certification

Plaintiffs' Motion devotes a single paragraph to their allegation that "many (if not most) of the clicks Defendant delivers come from 'ad content networks,'" whereas the "script" allegedly states that "clicks will come from people who are actively looking for goods or services using search engines." Plfs.' Mot., at 10. As noted in YellowPages.com's opposition, the evidence cited by Plaintiffs does not support this contention. Def.'s Opp., at 13.

In Reply, Plaintiffs characterize this issue as a "non-disclosure" claim, arguing that

*YellowPages.com* was obliged to present affirmative "evidence of disclosure."  Reply, at 17.  But

whether this "ad content network" theory is framed as a "misrepresentation" or an "omission"

claim, there can be no "fraud" without a plausible claim of injury.  For example, Google, who

Mr. Kent regularly cites to as an industry leader has ads displayed on its content network, in

addition to its search engine network, "unless the advertiser actively 'opts out' of having ads

displayed on the Google content network."  Declaration of Ronald L. Raider ("Raider Decl.")

¶ 9 (attached hereto as exhibit 57).  The benefits of being displayed on the content network are

described by Google as follows:

> The Display Network has the advantage of reaching potential customers at
> different points of the buying cycle.  Not every potential customer is
> focused on conducting a search.  Not every visitor is ready to buy at a
> given moment.  The advertiser's challenge is to capture their attention at
> the right time.
>
> For example, a user might begin a search for digital cameras with just an
> interest in reading reviews.  While reading a review, though, that user
> might note the ads of online retailers or click on the ads themselves.  With
> search-only advertising, this customer would have been missed.

Raider Decl. ¶ 10.  Thus, even if YellowPages.com's sales representatives did not explicitly

inform potential advertisers that their ads may be shown on an ad content network, such an

omission would not show any injury and therefore could not support a CFA claim.

**B.**      **Plaintiffs Lack Standing To Pursue Claims On Behalf of Absent Class
            Members That Have Not Suffered the Same Alleged Injuries**

For the first time in their Reply, Plaintiffs argue they do not need to have standing to

pursue all of their claims because "lead or representative plaintiffs in class actions are not

required to have standing to bring all claims asserted in the Complaint."  Plfs.' Reply, at 2-3.

Plaintiffs cite to securities class actions that rely upon the provisions of the Private Securities

Litigation Reform Act ("PSLRA").[9]  None of these decisions holds that a consumer class action can proceed without a named plaintiff who has standing to pursue all of the claims presented.

This consumer fraud class action is of course not governed by the PSLRA.  Accordingly, Plaintiffs must identify a named plaintiff who has standing to pursue all claims alleged by the putative class.  *See, e.g., Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) (plaintiffs with one type of injury lack standing to challenge a different, though perhaps related, injury, because "standing is not dispensed in gross").  In the absence of such standing, certification should be denied.

Implicitly recognizing that the named Plaintiffs lack standing to represent class members who purchased different products or had different experiences, Plaintiffs suggest that the class definition can be "adjust[ed]" to fit the facts.  Plfs.' Reply, at 3.  Any attempt to adjust the class definition to fit Plaintiffs' individual facts, however, would create overwhelming ascertainability problems.  Mr. Kowalski, for example, attempted to terminate his advertising immediately after ordering it (and without accepting the Terms and Conditions through continued contractual

---

[9] One of the cases cited by Plaintiffs, *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 245 F.R.D. 147 (S.D.N.Y.), *aff'd in part, vacated in part*, 574 F.3d 29 (2d Cir. 2009), cites *Fishbury, Ltd. v. Connetics Corp.*, No. 06 Civ. 11496, 2006 WL 3711566 (S.D.N.Y. Dec. 14, 2006), and *Hevesi v. Citigroup, Inc.*, 366 F.3d 70 (2d Cir. 2004), in support of this assertion.  The *Fishbury* decision construed the PSLRA as precluding **dismissal** of securities fraud claims merely because the lead plaintiff lacked standing; instead, the lead plaintiff was required to identify "named plaintiffs who have standing to represent the various potential subclasses of plaintiff."  2006 WL 3711566, at *4.  Similarly, *Hevesi* held that "because the PSLRA mandates that courts must choose a party [to identify lead counsel] who has, among things, the largest financial stake in the outcome of the case, it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim." *Id.* at 82.  If that is the case, however, additional named plaintiffs must be added "to aid the lead plaintiff in representing a class." *Id.* at 83.  Another securities fraud case cited by Plaintiffs, *In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 273 (S.D.N.Y. 2008), cites *In re Flag Telecom Holdings* and *Hevesi* on this issue.  Accordingly, none of the cases cited by Plaintiffs support the proposition that in consumer fraud class actions the named plaintiffs need **not** have standing to pursue all aspects of the claims asserted by the putative class.

performance on his part).[10]  The only class members he properly could represent are other New

Jersey advertisers who similarly sought to cancel their advertising immediately (and were

allegedly denied the right to cancel).  But Plaintiffs describe no process through which such

another advertiser can be identified.  Similarly, Ms. Winick could only represent other putative

class members who were allegedly dissatisfied with their online directory advertising but who

later disclaimed monetary damages.[11]  And Mr. Gidro could only represent other YPClicks!

purchasers who received all of the contracted-for clicks; paid all amounts owed; but nevertheless

---

[10] Moreover, Mr. Kowalski does not have standing to pursue these claims because he never made any payments, and thus has not suffered an "ascertainable loss.".  Def.'s Opp. at 21-23; *see. e.g., Kaplan v. Wholesale Auto. Supply Co.,* 2009 WL 1347404, *18 (N.J. Super. Ct. App. Div. Mar. 15, 2009) ("[A] plaintiff who cannot survive a summary judgment motion on the issue of ascertainable loss cannot proceed under the CFA at all, even for injunctive relief or counsel fees," and "[t]he CFA does not provide for recovery of statutory damages where a plaintiff cannot show actual harm."); *Czmyr v. Avalanche Heating and Air Conditioning, Inc.*, 2011 WL 519871 (N.J. Super Ct. App. Div. Feb. 16, 2011) ("[A] consumer claiming misrepresentation must show either out-of-pocket loss or a demonstration of loss in value").

Plaintiffs now argue Mr. Kowalski has suffered an ascertainable loss because YellowPages.com initiated collection proceedings against him.  Plfs.' Reply, at 5.  This overstates the record; YellowPages.com has not made any further attempts to collect this amount, and has expressly disclaimed its counterclaim for these amounts.  Def.'s Opp. at 23 n. 44.  Because YellowPages.com is not attempting to enforce the contract, Mr. Kowalski has not "incurred a legal obligation in the form of a debt," which is required to show an "ascertainable loss" in these circumstances.  *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 22, 647 A.2d 454, 464 (1994)

Citing to "pick off" cases, Plaintiffs also argue the counterclaim filed by YellowPages.com is evidence of an ascertainable loss that cannot be waived to destroy standing.  Plfs.' Reply, at 5-6. These cases are not on point.  YellowPages has not tried to "pick off" Mr. Kowalski or any other member of the putative class by tendering money to him in order to moot his affirmative claims, which is the conduct found in the cases cited.  Instead, YellowPages.com has elected to affirmatively abandon its contractual right to seek payment from Mr. Kowalski.

[11] Plaintiffs claim, without citation that "Mrs. Winick only disavowed monetary recovery beyond that available to the other class members."  Plfs.' Reply, at 4 n. 3.  A review of Ms. Winick's deposition testimony makes it clear, however, that she disclaimed any right to recovery monetary damages in any amount.  Winick Dep. at 65:1-11.

feels they received less than expected.[12]  The process of ascertaining class membership would swallow any examination of the merits.

In sum, without class members who purchased every YellowPages.com product and properly can speak for every class member, class certification is inappropriate.

### C.      Plaintiffs' Have Waived Any Claim for Declaratory or Injunctive Relief, Which is Meritless in Any Event

Plaintiffs' Motion devoted a single sentence to their claim for injunctive relief under Rule 23(b)(2).  Plfs.' Mot., at 14.  Thus, YellowPages.com's opposition pointed out that the Plaintiffs had waived this claim.  Def.'s Opp., at 23 n.45.  Although Plaintiffs' attempt to defend this claim for the first time in their Reply, a waived argument cannot be "resurrected" in a reply brief.[13]

In any event, Plaintiffs cite no authority in support of certification of an injunctive relief class challenging the practice of providing terms and conditions after a sale.  Although Plaintiffs cite *Specht v. Netscape Commc'ns Corp.*,  306 F.3d 17, 31 (2d Cir. 2002), and *Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362, 367 (E.D.N.Y. 2009), those cases merely address whether a plaintiff will be bound by terms and conditions of which he had no notice at the time he downloaded software.  These cases may be relevant to the merits issue of whether terms and

---

[12] YellowPages.com also established that Mr. Gidro's claim were not typical or that he was not an adequate representative because his claims are subject to the unique defense of voluntary payment.  *See* Def.'s Opp. at 25-26.  Relying on *Dillon v. U-A Columbia Cablevesion of Westchester, Inc.*, 100 N.Y.2d 525, 790 N.E.2d 1155 (2003), Plaintiffs argue that the voluntary payment doctrine does not apply.  But, in *Dillon*, the New York Court of Appeals *applied* the voluntary payment doctrine because the plaintiff knew of the late payment fees but made payments any way.  *Id.* at 526.  Here, Mr. Gidro knew the terms and conditions when he entered into the contract and knew the quality of services he was receiving throughout the contract.  Armed with this information, Mr. Gidro voluntarily paid the amounts owed to YellowPages.com.  Thus, YellowPages.com has a valid defense against Mr. Gidro.

[13] *EDP Medical Computer Sys., Inc. v. United States*, 480 F.3d 621, 625 n. 1 ("Although [plaintiff] did belatedly contend in its reply brief that the district court erred in its finding on these elements, its failure to press those arguments in its opening brief waives them.") (citing *Dixon v. Miller*, 293 F.3d 74, 80 (2d Cir. 2002) ; *NLRB v. Star Color Plate Serv.*, 843 F.2d 1507, 1510 n. 3 (2d Cir. 1988)).

conditions are binding, but they provide no support for certifying an injunctive relief class challenging the method of delivering the terms and conditions.  On this issue, YellowPages.com's authority is on point.[14]

Accordingly, Plaintiffs should be deemed to have waived any claim for declaratory or injunctive relief, which is meritless in any event.

### D.    Plaintiffs' Breach of Contract Claim Is Not Suitable for Certification

Plaintiffs' Motion mostly ignored their breach of contract claim, as YellowPages.com pointed out in its opposition brief.  *See* Plfs.' Mot., at 1, 15, 21 n.5, & 25 n.9; Def.'s Opp., at 23 n.45.  Plaintiffs' Reply attempts to "resurrect" this claim, re-characterizing the alleged misrepresentations about "ad content" clicks and the "local, targeted, and qualified" nature of clicks as "contract claims."  Plfs.' Reply, at 16.  For the reasons discussed above regarding Plaintiffs' belated invocation of Rule 23(b)(2), however, they also should be deemed to have waived any claim for class certification of their breach of contract claim.

In any event, even as re-cast by Plaintiffs, the only named Plaintiff who could possibly pursue a breach of contract claim is Mr. Gidro, because he is the only Plaintiff who purchased YPClicks!  Mr. Gidro, however, has never identified any provision of the Terms and Conditions allegedly breached by YellowPages.com; has never challenged YellowPages.com's delivery of ad content clicks; and has never claimed he received clicks that were not "local, targeted, and qualified."

Accordingly, even if not waived, Plaintiffs' breach of contract claim should be not certified.

---

[14] *See* Def.'s Opp., at 20 n.40 (citing, *inter alia*, *In re Samsung Elecs. Am. Blu-Ray Class Action Litig.*, No. 08-0663, 2008 WL 5451024, at *3-*4 (D.N.J. Dec. 31, 2008) (rejecting CFA claim predicated on providing terms and conditions within packaging of product)).

## III.    CONCLUSION

For the reasons set forth above and in YellowPages.com's opposition, Plaintiffs' Motion

for Class Certification should be denied.

Respectfully submitted this 2d day of May, 2011.

KILPATRICK TOWNSEND & STOCKTON LLP


_____/s/ James F. Bogan, III_____
JAMES F. BOGAN III (admitted *pro hac vice*)
C. ALLEN GARRETT JR. (admitted *pro hac vice*)
RONALD L. RAIDER (admitted *pro hac vice*)
JOHN R. GIBSON (admitted *pro hac vice*)
DANIEL G. SCHULOF (admitted *pro hac vice*)
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4528
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555

IAN M. GOLDRICH (NY State Bar No. 501475)
31 West 52nd Street, 14th Floor
New York, New York 10019
Telephone:  (212) 775-8700
Facsimile:  (212) 775-8800

US2008 2528994.6